## Corbin Banking Company v. Bryant.

(Decided December 12, 1912.)

### Appeal from Whitley Circuit Court.

1. Banks—Liability to Depositor—Evidence—Weight and Sufficiency.—Evidence examined and held sufficient to sustain verdict in favor of depositor for the amount deposited by him in bank.

2. Banks—Limitation of Actions—Computation of Period of Limitation—Accrual of Right of Action.—No cause of action arises for a general bank deposit, until after demand by the depositor and refusal of payment by the bank; and the statute of limitation does not begin to run in favor of the bank as against the depositor, until after such demand and refusal of payment.

3. Banks—Evidence—Pass Books and Other Books.—A pass book is not conclusive as to the matters therein contained, and upon the failure of the bank to enter therein or upon its books a deposit actually made, the facts of the deposit may be shown by other evidence.

STEPHENS & STEELY for appellant.

TYE & SILER for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

The Corbin Banking Company commenced business in the city of Corbin in the year 1902, and continued its corporate existence until sometime in January, 1910, when, in winding up its affairs, it transferred its banking building and good will to the Whitley National Bank, and its assets, in the way of notes, accounts, etc., to one Lon Rogers, who undertook the collection of these notes and accounts and assumed the payment of the bank's outstanding obligations. Among the claims which passed to Rogers was one against Dr. J. F. Bryant, for rent of offices in the banking building, for nine

months at $5 per month. Upon presentation, the doctor declined to pay same, upon the ground that the bank was indebted to him. This action on the part of the doctor resulted in the filing of a suit in the Whitley Quarterly Court by Rogers against him for $45. Shortly thereafter, Bryant instituted suit in the circuit court against Rogers, in which he sought to recover $414.34, claiming that this amount was due him on account of a deposit of $389.34 which he had made with the bank and for which he had been given no credit, and $25 alleged to have been charged to his account without right. The trial in the quarterly court resulted in a verdict in favor of Rogers. This was appealed to the circuit court, and the two cases were consolidated and tried together. The jury found in favor of the doctor on his claim for $389.34, and in favor of Rogers on his claim for $45, and the court entered judgment in accordance with this finding. Rogers appeals and seeks a reversal upon three grounds: First, that the court erred in instructing the jury; second, that the verdict is not sustained by the evidence and is flagrantly against the weight of the evidence; and third, that the plea of limitation interposed by Rogers to the claim of the doctor for $389.34 should have been sustained.

This claim for $389.34 arose in the following manner: Appellee alleges that he made a deposit in the bank for this amount and received from the cashier of the bank a duplicate deposit slip—and he produced this slip, the genuineness of which was not contested by appellant. The pass book of appellee shows that he never received credit on his account for this amount. Appellant explains the issual of this duplicate deposit ticket and the failure of the bank to give appellee credit on his account for this amount, in this way. The cashier of the bank testifies that on the day upon which this duplicate deposit ticket was issued, appellee came to the bank and borrowed $400, executed a note therefor, and that this $389.34 represented the net proceeds of said note, after deducting therefrom the discount at eight per cent for four months; that the deposit slip was entered on the file at the time the transaction was had, but that, during the day and before the books were made up, appellee returned to the bank and notified the cashier that he did not need the $400, as the business transaction in which he contemplated using it had fallen through, and requested that the note be returned to him.

He states that this was done, and that the deposit slip, which had been placed on file, was torn up and destroyed by him, and, on that account, no entry whatever was made of the matter, either on the books of the bank or upon appellee's pass book. Appellee showed that the cashier of the bank had never, on any other occasion, conducted a business transaction for the bank in the way in which, he says, he did this with appellee. Appellee's book had been balanced several times while he was doing business with the bank, and he made no claim, when it was so balanced, that the showing made by the bank was not correct. It is argued from this that, as no complaint was made until after he was sued for the rent, it is apparent that this claim is the result of an afterthought. And it is insisted that this position is strengthened by the further fact that, about the time the bank was going out of business and, in fact, just before it ceased to do business, appellee paid an overdraft to the bank for something like $200, thus practically admitting that, at that time, he had no thought that the bank was indebted to him. There would be much force in this line of argument, if the evidence supported the contention upon which it is based. We find that upon this point, appellee testified as follows:

"About January 3, 1910, I think it was, the bank was then going out of business, Mr. Bishop came and says, 'you have overdrawn your account over $200' and I says, 'no, I don't think I have,' and he says, 'you are, and Mr. Rogers is going to take charge of the bank, and I have been nice to you and we have always gotten along, and I want you to fix it,' and he insisted that I give him a check. I said, 'you have not made up my pass book properly,' and he still insisted that I give him a check, and he says, 'we will make up your pass book, and if it is not right we will pay you,' and under that condition I gave him a check for $200 on some funds my wife had in the bank."

Although the cashier testified, this statement of appellee, to the effect that at that time he was claiming there was an error in his account, was not contradicted. With the record in this state, it was the province of the jury to determine the rights of the parties. The instructions given by the court presented the issue in a way, in which it could not have been misunderstood by the jury. It was not a difficult question, and the verdict, as returned by the jury, clearly shows that they under-

stood the questions at issue. There was really no denial, on the part of the doctor, that he had occupied offices in the banking building for nine months, or that he was to pay $5 per month therefor, and the jury accordingly awarded to appellant this amount. There was abundant evidence to support this finding, and no just complaint can be made of the jury because it accepted the evidence of appellee upon this point as true, rather than that of appellant and his witnesses.

Other minor errors are complained of, in brief, by counsel for appellant, but, upon the whole case, we are satisfied that he was given a fair opportunity to present his case to the jury, and no reversible error being presented in the record, the judgment must be affirmed unless the plea of the statute of limitation is well taken.

The duplicate deposit slip, issued to appellee by the cashier of the bank, showed that appellee had deposited in bank, on that date, the sum of $389.34. It is insisted for appellant that, as more than five years had elapsed from the date of the deposit before demand was made by appellee for this money, his right to recover is barred. This position is not sound. No cause of action arises for the recovery of a demand bank deposit until after it has been demanded and its payment has been refused. Clark v. Farmers National Bank, 124 Ky., 563. The statute of limitation does not, therefore, begin to run against a depositor in favor of a bank, until he makes demand for the money and payment is refused. Koelzer v. First National Bank, 125 Wisc., 595; Howell v. Adams, 68 N. Y., 314. Appellee never, at any time until the suit was instituted, made demand for this money; and he states the reason why he failed to do so was that, by an oversight, he did not notice that he had not been given credit for this money on his bank book. In response to this explanation, it is insisted for appellant that appellee is not entitled to recover, because he should have discovered that, by fraud or mistake, the bank had failed to give him credit for this money before the lapse of more than five years from the date upon which he was entitled to have credit for same. This contention of appellant need not be considered, for the reason that there is no effort to recover on the ground of fraud or mistake. It was not necessary, so far as appellee was concerned, that the record of the deposit of this money should have been entered upon his pass book. Evidently he did not have his pass book with him at the

time the deposit was made, and the duplicate deposit slip served to take the place of the entry in his pass book. The failure of the bank to enter this deposit upon its books or the pass book is no defense for its refusal to pay upon demand, if, in fact, the deposit was made by appellee in said bank, and of this question the jury was the judge. The plea of the statute of limitation presenting no defense to the cause of action, the trial court properly sustained a demurrer thereto.

Upon a consideration of the whole case, we find no ground for disturbing the judgment of the lower court, and it is, therefore, affirmed.