## Dorman, Banking Commissioner, v. Adams.

(Decided Nov. 29, 1932.)

(As Extended on Denial of Rehearing March 14, 1933.)

MARK BEAUCHAMP, DAYTON T. MITCHELL and GEORGE C. BURTON for appellant.

STANLEY NEWHALL for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Affirming.

For some years prior to November 20, 1930, the Union Central Bank, a state banking institution with a capitalization of $200,000, divided into 2,000 shares of a par value of $100 each, was engaged in business in the city of Louisville, but on that date its doors were closed by order of its board of directors, and the state banking commissioner assumed control, placing it in charge of a special deputy and liquidating agent. The process of liquidation continued until December, 1931, when the liquidating agent decided that the remaining assets would not be sufficient to pay the outstanding indebtedness and items of interest, cost of liquidation, and other expenses which would thereafter accrue, and therefore it would be necessary to make an assessment against the stockholders. Not being certain of the amount required, the liquidating agent, under authority granted by the banking commissioner, employed a firm of accountants to make an audit as a basis for determining the necessary amount. The accountants made an audit which, as shown by their report to the liquidating agent, was confined to an attempt to place a fair valuation on the assets still remaining in his hand at the close of business on the 16th day of December, 1931. The assets consisted principally of loans and discounts, and the report contains a detailed statement setting out the

various notes, the character of collateral, whether the notes were estimated to be good or doubtful, and the estimated losses which would be sustained. In a summary, the book value of all assets is shown to be $345,-191.99 and the estimated amount that would be realized therefrom $52,074.27.

On January 23, 1932, the banking commissioner and G. M. Kennady, his special deputy and liquidating agent in charge of the bank, filed a petition in chancery in the Jefferson circuit court setting out the above-stated facts, and alleged that the liabilities, interest, and expenses to be met would amount to a total of $264,318.69, and, after deducting the amount estimated to be realized from the assets by the audit, the deficiency would be $212,244.42, showing the bank to be insolvent; that, by reason of such insolvency, it would be necessary to assess the stockholders in the amount of 100 per cent. of the maximum liability imposed in such cases under the statutes of this state; and they prayed that they be authorized and directed by the chancellor to assess the maximum liability imposed by statute against all persons subject to assessment as stockholders, and be authorized to take such steps and bring such actions as might be necessary to enforce such liability. The report of the auditors was filed with and made a part of the petition.

On January 30 a judgment and order was entered granting to the banking commissioner the relief and authority sought by the petition.

On February 11, 1932, Robert P. Adams, a stockholder of the bank, entered his written motion asking that the order and judgment of January 30 be set aside, and that he be permitted to file an intervening petition on behalf of himself and other stockholders. By order entered March 15, his motion was sustained, and the petition ordered filed.

Without going into detail, it may be said that the intervening petition traverses the allegations of the petition and further alleges, in substance, that in the total amount which it is estimated in the audit and alleged in the petition, the liquidating agent will be required to meet are included sums to pay future interest and costs of liquidation greatly in excess of the amount necessary for such purposes; that by an audit made for

the banking commissioner in December, 1930, the same notes included in the report filed with the petition were appraised at $209,455.39, in excess of the appraisement now placed upon them by the banking commissioner and his deputy; that the appraisal now made is much too low, and the intervening petitioner will be able to show upon hearing of the matter that the remaining assets are worth several times the appraisement fixed by the petition. It is further alleged that the petition seeking auhority to assess the stockholders the full amount permitted by the statute is based on a plan to continue the liquidation for two years at an estimated cost of $47,381.56 to collect the sum of $52,174.27, which the commissioner estimates may be realized on notes of a face value of $312,002.06, and of which he recognizes approximately $40,000 as good; that the circumstances shown by the petition entitled the intervening petitioner and other stockholders to a hearing on the plan proposed.

After hearing the evidence orally, it was adjudged by the chancellor (1) that the necessity for an assessment to the extent of 100 per cent. at this time is not shown by the testimony; (2) that it is impossible under the evidence to fix an assessment of a lesser percentage with sufficient accuracy; (3) that the liability of stockholders, both in determining the percentage to be collected and in collecting it, is several in its nature; (4) that, in computing the amount of the assessment necessary to meet the liabilities, interest on deposits not properly proven within the time fixed by statute should not be included as a liability to be met by the proposed assessment; (5) that, for the reasons indicated, the judgment of January 30, 1932, should be set aside and the petition of the banking commissioner on which the same was entered be dismissed, and the commissioner refund to stockholders the amounts paid under the order of assessment. From this judgment the banking commissioner is prosecuting this appeal.

It is first argued by counsel for appellant that a stockholder has no right to intervene in an action of this character. This argument is based on the theory that Ky. Statutes, sec. 165a-17, makes complete provision for all steps necessary in the liquidation of insolvent banks and that it is exclusive; that no authority is found in that section for the intervention of a stock-

holder, and, if such authority is to be found anywhere, it must be under section 23 of the Civil Code of Practice, which provides:

> "Any person may be made a defendant who claims an interest in the controversy adverse to the plaintiff, or who is a necessary party to a complete determination of the question involved in the action"

Counsel furthermore argue that there is no controversy in an action of this character so far as any one particular person is concerned.

A number of cases are cited as supporting the contention that the statute in question is exclusive and controlling; however, a careful examination of those cases discloses that they are not determinative of the particular question presented. It is not a question as to whether an assessment made in an ex parte proceeding, unless called in question as is done in this instance, would be legal, but the sole question is whether one not a party to that proceeding, and whose rights may be materially affected thereby, may intervene to assert such rights. Here the stockholder made it appear that he had such a present and substantial interest in the matter in controversy that a final decree such as was sought would injuriously affect him and other stockholders with like interest, and that a final determination without permitting him to intervene and be heard would be inconsistent with equity and good conscience.

In such circumstances, it is manifest that the chancellor did not err in permitting appellee to file his intervening petition and be heard. 20 R. C. L. 667, sec. 8; Commonwealth Trust Company v. Smith, 266 U. S. 152, 45 S. Ct. 26, 69 L. Ed. 219; Niles-Bement-Pond Company v. Iron Moulders' Union, 254 U. S. 77, 41 S. Ct. 39, 65 L. Ed. 145.

Counsel for respective parties differ in opinion as to when interest begins to run on deposits in cases of this character, in absence of agreement to pay interest. It is pointed out by both sides that there is no case in this state bearing directly on the question. However, it has been held by this court that, when a deposit is made in a bank, the relation of debtor and creditor is established between the bank and the depositor. Williams v. Rogers, 77 Ky. (14 Bush) 776; Burnam v. Com-

monwealth, 228 Ky. 410, 15 S. W. (2d) 256. And an ordinary deposit, subject to check, is a demand loan which, in the absence of a contract, does not become due, and does not bear interest, nor can an action be maintained for its recovery until payment thereof has been demanded by the depositor and refused by the bank. Clark's Adm'r v. Farmers' National Bank, 124 Ky. 563, 99 S. W. 674, 30 Ky. Law Rep. 738; Corbin Banking Co. v. Bryant, 151 Ky. 194, 151 S. W. 393. In none of these cases was the insolvency or suspension of business by the bank involved, but they were dealing with accounts between a depositor and a solvent bank. The ordinary deposit, being in its nature a demand loan, necessarily implies a contract of the bank to pay the depositor upon demand. The suspension of business by a bank because of insolvency, closing its doors to customers, is in effect a breach of its contract to pay the depositor upon demand, and to all intents and purposes creates the same situation as if payment had been demanded by the customer and refused by the bank before it suspended business.

Our conclusion is that depositors are entitled to interest from the time the bank suspended business, and in this we find support in well-considered opinions from other jurisdictions. Barnes v. Arnold, 23 Misc. 197, 51 N. Y. S. 1109, affirmed 45 App. Div. 314, 61 N. Y. S. 85; Id., 169 N. Y. 611, 62 N. E. 1093; McGowan v. McDonald, 111 Cal. 57, 43 P. 418, 52 Am. St. Rep. 149.

Some question is made by appellant as to the correctness of the chancellor's finding that the liability of stockholders both in determining the percentage to be collected and in collecting it is several in its nature. However, it is practically conceded that the finding in this respect is in harmony with the rule prevailing in this state.

Section 547, Kentucky Statutes, relating to private corporations in general, in so far as pertinent, provides:

"* * * Stockholders in banks, trust companies, guaranty companies, investment companies and insurance companies shall be liable equally and ratably, and not one for the other, for all contracts and liabilities of such corporation to the extent of the amount of their stock at par value, in addition to the amount of such stock. * * *"

Section 595 of our Statutes which is included in chapter 32 thereof relating to private corporations, but which relates solely to banks, in providing for double liability of stockholders, adopts the identical language above quoted, except that the word "liable" is omitted and the words "individually responsible" are inserted in its place.

These sections were adopted at the same session of the General Assembly, but, since it is apparent that there is no conflict between them, and their purpose and effect, so far as banks are concerned, is the same, it is unnecessary to enter into an inquiry as to why both were adopted. So far as the liability of the individual stockholder is concerned, the language of these sections is so clear and explicit as to exclude all doubt as to their meaning. Under either or both sections, every stockholder in a bank is responsible for the double liability, but the liability is several and individual, and they should be assessed and required to pay equally and ratably, but not one for the other. For example, if in this instance the liabilities should exceed the assets by $150,000 (the capital stock being $200,000), a 75 per cent. assessment would be necessary, and each holder of one share would be assessed and required to pay 75 per cent. of the par value of his share, or $75, and this without regard to whether other stockholders were insolvent or for any reason failed to pay their assessment. See Gamewell Fire Alarm Tel Co. v. Fire & Police Tel. Co., 116 Ky. 759, 76 S. W. 862, 25 Ky. Law Rep. 1010; Castleman v. Holmes, 27 Ky. (4 J. J. Marsh.) 1; Barnes v. Scott, 168 Ky. 121, 181 S. W. 984; Robertson v. Conway (C. C. A.) 188 F. 579; Alsop v. Conway (C. C. A.) 188 F. 568; Conway v. Owensboro Savings Bank & Trust Co. (C. C.) 185 F. 950; Ohio Valley Nat. Bank v. Hulitt, 204 U. S. 162, 27 S. Ct. 179, 51 L. Ed. 423; Scott v. Deweese, 181 U. S. 202, 21 S. Ct. 585, 45 L. Ed. 822; U. S. ex rel. Citizens' Nat. Bank v. Knox, 102 U. S. 422, 26 L. Ed. 216.

Argument that the order of January 30, 1932, authorizing the assessment was justified by the facts, and should not be set aside, necessarily involves a consideration of the evidence introduced on the hearing. A stockholders' committee procured an audit to be made by a firm of reputable accountants, and this, as well as the audit made for the banking commissioner, was introduced in evidence.

In the record there is an opinion by the chancellor in which the evidence is reviewed at great length and carefully weighed and analyzed. After pointing out that on the original hearing the banking commissioner made out a prima facie case for a 100 per cent. assessment, he enters into a careful review and analysis of the evidence to determine whether the banking commissioner's case is sustained by proof on final hearing. It is pointed out in the opinion that the evidence discloses that the item of over $47,000 as future expense of liquidation is based on the expense of the previous year, and that some of the items of expense of the previous year will not again be incurred or the amounts will be materially reduced, and he concludes from all the evidence that the expense of liquidation for the next two years should not in any event exceed the sum of $26,000. He also concludes that the item of interest on liabilities to be met is excessive, and there is ample evidence to support that conclusion. There is a very sharp conflict in evidence of auditors for the respective parties as to the value of notes and other assets held by the bank, and, as indicated by the chancellor, the appraisement of the auditor for the stockholders' committee was attacked by appellant with some degree of success. However, there is substantial evidence tending to show that much more will be realized from the assets than is indicated by the petition or the auditor's report filed therein. In fact, the evidence discloses that substantial sums have already been collected on notes listed in the loss column and on notes listed as doubtful.

We deem it unnecessary to further extend a discussion of the evidence, since we have carefully read and considered it and find that it has been carefully summarized in the chancellor's opinion.

The judgment finds ample support in the evidence and should not be disturbed if the law vests in the chancellor the authority and discretion of determining the necessity for and the extent of the proposed assessment. If the chancellor is not vested with such power and authority but must accept and give approval to whatever may be recommended by the banking commissioner, counsel are correct in their contention that it was error to set aside the judgment or order authorizing the assessment; however, we find that the extent of the chancellor's power to determine these matters is no

longer an open question in this state. Under section 547a, Kentucky Statutes, which applies to banks in course of liquidation (Hughes v. Marvin, 216 Ky. 190, 287 S. W. 561), a banking commissioner may upon order of court bring such action or take such proceedings as may be necessary and proper to enforce the liability imposed upon stockholders under section 547 or 595 of our Statutes.

In Denny, Banking Commissioner, v. Kennedy, 229 Ky. 178, 16 S. W. (2d) 1030, 1032, it is said:

"However, under the latter statute (section 547a) it is not only clear that such action may now be maintained by a trustee, assignee, receiver, or commissioner; but it is also evident that it was the intention of the Legislature to restrict the right of action to such fiduciaries. Also as the right to collect the double liability from the shareholders is not given to these fiduciaries until it is found necessary to make such collections under a proper administration of the assets, and then only upon an order of court, it is equally clear that the Legislature intended to postpone the right of action for such purpose until such time."

The primary purpose of this statute is self-evident and no interpretation should be adopted that will operate to defeat that purpose. However, in giving it application, administrative officers and courts will not be altogether blind to the rights of the stockholders. In other words, the rule of reason should control to the end that the rights of all parties in interest may be properly safeguarded.

We do not interpret the statute or the construction placed upon it by the court to mean that action must be deferred until all the assets are reduced to cash or its equivalent thus removing all doubt as to what extent, if any, the liabilities of the bank exceed its assets, neither does it mean that the chancellor may arbitrarily withhold or postpone action looking to the enforcement of the liability under the statute when at any time it is made to appear that an assessment will be necessary and the showing by the commissioner is such that it may be determined with a reasonable assurance of accuracy the percentage of assessment that will be required to carry out the purposes of the statute.

The chancellor is clothed with a discretion in the matter, and when, as in this instance, his finding is substantially supported by evidence and there is no abuse of discretion, this court will not be justified in disturbing the judgment.

Judgment affirmed.