**FEDERAL DEPOSIT INS. CORPORATION
v. WILHOIT, Director of Banking of
Kentucky.**

No. 25.

District Court, E. D. Kentucky.

April 14, 1943.

Francis C. Brown, of Washington, D. C., John L. Cecil, of Chicago, Ill., and Peter, Heyburn & Marshall and Gavin H. Cochran, all of Louisville, Ky., for plaintiff.

Hubert Meredith, Atty. Gen. of Kentucky, and Jesse K. Lewis, Asst. Atty. Gen. of Kentucky, for defendant.

FORD, District Judge.

This cause having come on to be heard in chief on the plaintiff's complaint as amended, on the defendant's answer as amended, on the stipulation of fact filed herein on November 16, 1942, and on argument of counsel, and the Court being sufficiently advised, the Court finds the following facts and reaches the following conclusions of law:

### Findings of Fact

1. The Federal Deposit Insurance Corporation (hereinafter called "FDIC") is a corporation duly created, organized and existing under and by virtue of an Act of the Congress of the United States, 12 U.S.C.A. § 264, and its principal place of business is in Washington, D. C.

2. The cause of action in this case arose under the laws of the United States, 12 U.S.C.A. § 264(j) Fourth; and the amount in controversy, exclusive of interest and costs, exceeds the sum of $3,000 (see stipulation of November 16, 1942).

3. On and for several years prior to June 26, 1937, the Ghent Deposit Bank (hereinafter called "the Bank") was a banking corporation duly created, organized and existing under and by virtue of the laws of Kentucky, and its principal place of business was located in Ghent, Carroll County, Kentucky. During all times material to this action, the Bank was a resident and citizen of Kentucky, and of Ghent, in the Eastern District of Kentucky.

4. On and for several years prior to June 26, 1937, the Bank was an "insured bank" within the meaning of 12 U.S.C.A. § 264(c) (8), and its deposits were insured by FDIC in the manner and to the extent provided by 12 U.S.C.A. § 264.

5. On and prior to June 26, 1937, Hiram Wilhoit was and he still is the duly appointed, qualified and acting Director of the Division of Banking of the Department of Business Regulation of Kentucky.

6. On or about June 26, 1937, the Bank suspended business because of insolvency, and was taken in charge by Hiram Wilhoit, acting in his official capacity as aforesaid (hereinafter called "the Director"), for liquidation, pursuant to the provisions of Carroll's Kentucky Statutes, §§ 165a-16, 165a-17 (now K.R.S. 287.560–287.610, inclusive). Ever since June 26, 1937, the Director has been and he now is in charge of the assets and affairs and of the liquidation and the winding up of the affairs of the Bank.

7. On or about July 8, 1937, C. J. Sandefur was duly appointed by the Director as and qualified and became the Special Deputy Director of the Division of Banking of the Department of Business Regulation of Kentucky in charge of the liquidation of the Bank (said C. J. Sandefur acting in his official capacity as aforesaid being hereafter called "Sandefur"), and continued in that capacity until his death on or about August 17, 1938.

8. On or about September 17, 1938, George A. Quinn was duly appointed by the Director as and qualified and became the Special Deputy Director of the Division of Banking of the Department of Business Regulation of Kentucky in charge of the liquidation of the Bank (said George A. Quinn acting in his official capacity as aforesaid being hereinafter called "Quinn"), and continued in that capacity until his resignation on or about August 5, 1940.

9. On or about August 19, 1940, James H. Newman was duly appointed by the Director as and qualified and became the Special Deputy Director of the Division of Banking of the Department of Business Regulation of Kentucky in charge of the

liquidation of the Bank (said James H. Newman acting in his official capacity as aforesaid being hereinafter called "Newman"), and continued in that capacity until the purported termination of the liquidation of the Bank on or about December 31, 1941.

10. On and after December 31, 1941, continuously until the present time, the Director has been and is in personal charge of the affairs and liquidation of the Bank.

11. After the Bank suspended business and was taken in charge by the Director, as hereinabove set forth, FDIC, pursuant to 12 U.S.C.A. § 264(*l*) (6), promptly paid claims of the depositors of the Bank, and FDIC duly received from each owner of an insured deposit to whom it made payment, as aforesaid, a written receipt and assignment which provided, insofar as material herein, as follows: "For the purpose of subrogating the Federal Deposit Insurance Corporation to all of claimant's rights against said closed insured bank arising out of the insured deposit in the amount shown above, to the extent of the amount paid the receipt thereof is hereby acknowledged, claimant hereby assigns, transfers, and sets over unto said Corporation all claims against said closed insured bank and its stockholders arising out of said insured deposit, together with all evidences of such indebtedness held by claimant."

12. On June 26, 1937, when the Bank suspended business and was taken in charge for liquidation as aforesaid, and during all times material herein, the Act of Congress authorizing FDIC to make payments to insured depositors in closed insured banks, 12 U.S.C.A. § 264(*l*) (6), provided: "Whenever an insured bank shall have been closed on account of inability to meet the demands of its depositors, payment of the insured deposits in such bank shall be made by the Corporation as soon as possible, subject to the provisions of paragraph (7) of this subsection, either (A) by making available to each depositor a transferred deposit in a new bank in the same community or in another insured bank in an amount equal to the insured deposit of such depositor and subject to withdrawal on demand, or (B) in such other manner as the Board of directors may prescribe: Provided, That the Corporation, in its discretion, may require proof of claims to be filed before paying the insured deposits, and that in any case where the Corporation is not satisfied as to the validity of a claim for an insured deposit, it may require the final determination of a court of competent jurisdiction before paying such claim."

13. During all said times the said Act of Congress, 12 U.S.C.A. § 264(*l*) (7), further provided: "In the case of a closed national bank or District bank, the Corporation, upon the payment of any depositor as provided in paragraph (6) of this subsection, shall be subrogated to all rights of the depositor against the closed bank to the extent of such payment. In the case of any other closed insured bank, the Corporation shall not make any payment to any depositor until the right of the Corporation to be subrogated to the rights of such depositor on the same basis as provided in the case of a closed national bank under this section shall have been recognized either by express provision of State law, by allowance of claims by the authority having supervision of such bank, by assignment of claims by depositors, or by any other effective method. In the case of any closed insured bank, such subrogation shall include the right on the part of the Corporation to receive the same dividends from the proceeds of the assets of such closed bank and recoveries on account of stockholders' liability as would have been payable to the depositor on a claim for the insured deposit, but such depositor shall retain his claim for any uninsured portion of his deposit; Provided, That the rights of depositors and other creditors of any State bank shall be determined in accordance with the applicable provisions of State law."

14. On or about April 13, 1938, FDIC duly filed with Sandefur its claim in writing, and alleged therein that on June 26, 1937, the day on which the Bank suspended business because of insolvency and was taken in charge by the Director as aforesaid, the Bank was justly and legally indebted to certain persons, firms and corporations, designated as "depositors", on account of deposit balances maintained by such persons, firms and corporations in the Bank; that from and after said date and before the filing of said claim, pursuant to law, FDIC had paid claims of the said depositors for insured deposits in the aggregate amount of $171,774.55, and had received written assignments of the claims of depositors so paid. Annexed to said claims so filed with Sandefur was a list containing the names of said depositors and the

amounts of the respective deposit balances so assigned to FDIC and the nature of such claims of said depositors. The claims so filed by FDIC set forth that by reason of said payments made to said depositors by FDIC, there was due FDIC from the proceeds realized from the liquidation of the assets of the Bank, the sum of $171,774.55, being the amount of the insured claims paid by FDIC and assigned by said depositors to FDIC as aforesaid.

15. On or about April 21, 1939, FDIC duly filed with Quinn its claim in writing, and alleged therein that on June 26, 1937, the date on which the Bank suspended business because of insolvency and was taken in charge by the Director as aforesaid, the Bank was justly and legally indebted to certain persons, firms and corporations, designated as "depositors", on account of deposit balances maintained by such persons, firms and corporations in the Bank; that from and after said date and before the filing of said claim, pursuant to law, FDIC had paid claims to said depositors for insured deposits in the aggregate amount of $1,850.03, and had received written assignments of the claims of depositors so paid. Annexed to said claims so filed with Quinn was a list containing the names of said depositors and the amounts of the respective deposit balances so assigned to FDIC and the nature of such claims of such depositors. The claims so filed by FDIC set forth that by reason of said payments made to said depositors by FDIC, there was due FDIC from the proceeds realized from the liquidation of the assets of the Bank, the sum of $1,850.03, being the amount of the insured claims paid by FDIC and assigned by said depositors to FDIC as aforesaid.

16. On or about October 9, 1939, FDIC duly filed with Quinn its claim in writing, and alleged therein that on June 26, 1937, the date on which the Bank suspended business because of insolvency and was taken in charge by the Director, the Bank was justly and legally indebted to certain persons, firms and corporations, designated as "depositors", on account of deposit balances maintained by such persons, firms and corporations in the Bank; that from and after said date and before the filing of said claim, pursuant to law, FDIC had paid claims of said depositors for insured deposits in the aggregate amount of $480 and received written assignments of the claims of depositors so paid. Annexed to said claims so filed with Quinn was a list

containing the names of said depositors and the amount of the respective deposit balances so assigned to FDIC and the nature of such claims of said depositors. The claims so filed by FDIC set forth that by reason of said payments made to said depositors by FDIC, there was due FDIC from the proceeds realized from the liquidation of the assets of the Bank, the sum of $480, being the amount of the insured claims paid by FDIC and assigned by the said depositors to FDIC as aforesaid.

17. Sandefur on or about July 20, 1938, and Quinn on or about April 26, 1939, and on or about October 25, 1939, respectively, approved and allowed the said claims of FDIC in the amounts of $171,774.55, $1,850.03 and $480, respectively, and on or about the several dates last mentioned Sandefur and Quinn, respectively, duly reported to the Circuit Court of Carroll County, Kentucky, their respective actions in approving the aforesaid claims of FDIC. Of the FDIC's claim in the amount of $171,774.55, Sandefur allowed $1,150.06 as a claim entitled to preference in payment, and allowed $170,624.49 of said claim of FDIC as a common claim. Quinn allowed FDIC's said claims in the respective amounts of $1,850.03 and $480 in full as common claims against the Bank.

18. On or about October 15, 1937, the Director paid or caused to be paid to FDIC the sum of $1,150.06 in full payment of the principal of the preferred claim allowed by Sandefur in its favor against the Bank as hereinabove set forth.

19. On the following dates the Director paid or caused to be paid to FDIC dividends in the following respective amounts:

| Date | Dividend Received |
|---|---|
| 10–15–37 | $35,000.00 |
| 11–20–37 | 10,000.00 |
| 12– 6–37 | 5,000.00 |
| 2–10–38 | 25,000.00 |
| 4– 6–38 | 20,000.00 |
| 7–22–38 | 10,000.00 |
| 12– 8–38 | 10,000.00 |
| 3–23–39 | 6,537.21 |
| 4–12–40 | 17,295.45 |
| 9– 6–40 | 17,295.45 |
| 12–19–40 | 681.02 |
| 12–30–41 | 17,295.45 |

The aforesaid payments so made to FDIC by the Director aggregated the sum of $174,104.58, which was an amount equal to the principal of the total aggregate claim of FDIC against the Bank, and said pay-

ments were accepted by FDIC with full and express reservation of its right to the interest on said total aggregate claim to which FDIC was and is entitled by law.

20. On or about February 3, 1942, FDIC duly forwarded and submitted to, and filed with, the Director, its demand for interest in the sum of $16,128.02, representing interest on the principal of its total aggregate claim as follows:

| Date | Dividend Received | Reducing Balance | Days Outstanding | Interest Due |
|---|---|---|---|---|
| 6–26–37 | – 0 – | 174,104.58 | 111 | $ 3,176.81 |
| 10–15–37 | 35,000.00 | 139,104.58 | 36 | 823.19 |
| 11–20–37 | 10,000.00 | 129,104.58 | 16 | 339.56 |
| 12– 6–37 | 5,000.00 | 124,104.58 | 66 | 1,346.44 |
| 2–10–38 | 25,000.00 | 99,104.58 | 55 | 896.02 |
| 4– 6–38 | 20,000.00 | 79,104.58 | 107 | 1,391.37 |
| 7–22–38 | 10,000.00 | 69,104.58 | 139 | 1,578.98 |
| 12– 8–38 | 10,000.00 | 59,104.58 | 105 | 1,020.15 |
| 3–23–39 | 6,537.21 | 52,567.37 | 385 | 3,326.86 |
| 4–12–40 | 17,295.45 | 35,271.92 | 147 | 852.32 |
| 9– 6–40 | 17,295.45 | 17,976.47 | 104 | 307.32 |
| 12–19–40 | 681.02 | 17,295.45 | 376 | 1,069.00 |
| 12–30–41 | 17,295.45 | – 0 – | — | – 0 – |
| | | | | $16,128.02 |

21. After the submission of FDIC's demand upon the Director for interest, as hereinabove set forth, the Director, on or about February 27, 1942, rejected said demand for interest and disallowed the same, and refused the payment of same or of any part thereof.

22. The aggregate of all claims of all creditors of the Bank (exclusive of claims based upon ownership of stock in the Bank), other than the claim of FDIC, was relatively insignificant, being only a small percentage of the principal of the claim of FDIC. The Director has paid in full the principal of all claims whatsoever against the Bank (exclusive of claims based upon ownership of stock in the Bank), and practically all the expenses of liquidation of the Bank have also been paid in full. After the payment of all, or practically all, of the expenses of liquidation and the payment in full of the principal of all claims against the Bank (exclusive of claims based upon ownership of stock in the Bank), the Director has in his possession money and choses in action of the Bank still remaining for distribution. The Director has cash on deposit to his credit in his official capacity, in the sum of $2,654.65; and he also holds as an asset and uncollected balance of $6,783.46 due and owing under an as-

sessment made by said Director on May 26, 1942, pursuant to an order that day duly entered by the Circuit Court of Carroll County, Kentucky, under authority of the provisions of Carroll's Kentucky Statutes, §§ 595 and 547a (now K.R.S. 287.360 and 271.190, respectively), against the stockholders of said Bank (see stipulation of November 16, 1942).

23. An appeal is now pending in the Court of Appeals of Kentucky from a judgment entered on June 8, 1942, by the Circuit Court of Carter County, Kentucky, in an action in that court styled Federal Deposit Insurance Corporation, Plaintiff, v. Hiram Wilhoit, Director of the Division of Banking, et al., Defendants.[1] The said judgment appealed from and now pending in the Court of Appeals of Kentucky adjudicated (a) the validity of claims of the estates of A. J. Stamper and G. W. Stamper, deceased, against the Carter County Commercial Bank of Olive Hill, Kentucky, in the sums of $25,300 and $2,160, respectively, and (b) the claim of FDIC for interest on the principal of its total aggregate claim against Carter County Commercial Bank growing out of FDIC's payment of the insured deposits of said Carter County Commercial Bank, the principal aggregate amount of said claim having been paid to FDIC by Elwood G. Lewis, Special Deputy Director, Division of Banking, Department of Business Regulation of Kentucky, in charge of the liquidation of said Bank, but the said Deputy Director having refused to pay the FDIC any interest thereon. Said judgment of June 8, 1942 of the Carter Circuit Court adjudged and decreed that the aforesaid claims of the estates of A. J. Stamper and G. W. Stamper, de-

[1] Not released by court at date of publication.

ceased, were valid and must be paid out of the assets of the closed Carter County Commercial Bank, and disallowed and dismissed FDIC's claim for interest because, after the payment of the aforesaid claims of the two estates just mentioned, there would be insufficient assets of said bank to pay interest on any claims, and for the further reason that in the opinion of the Carter Circuit Court the Act of Congress creating FDIC, 12 U.S.C.A. § 264, in and of itself precludes the right of FDIC to be paid interest on the principal amount of insured deposits which FDIC had paid.

### Conclusions of Law

1. This Court has jurisdiction of this action, 28 U.S.C.A. § 41(1) (a); Id., Title 12, § 264(j) (Fourth).

2. There is no occasion to, and the Court does not now, determine whether the Director is in effect a receiver of the Circuit Court of Carroll County, Kentucky, or whether the assets in the Director's hands for liquidation constitute a receivership res in the hands of said Carroll Circuit Court.

3. The relief sought by FDIC in this action, if granted, will not have the effect of disturbing or in any wise interfering with the possession or control of the assets of the defunct Ghent Deposit Bank, if those assets can be deemed to be in the constructive possession of said Carroll Circuit Court.

4. The filing by FDIC of its claim for interest in the sum of $16,128.02 on February 3, 1942, with the Director, did not constitute a submission of the controversy involved in this action to the Carroll Circuit Court, and this action is properly within the jurisdiction of this Court. Conners v. Federal Deposit Insurance Corp., D.C., 39 F.Supp. 812.

5. In deciding this action, it is unnecessary for this Court to construe, and this Court does not now undertake to construe, K.R.S. 287.320 (formerly Carroll's Kentucky Statutes, § 584b), since FDIC's rights in this action are derived from the provisions of 12 U.S.C.A. § 264(1), and the written assignments hereinabove more particularly mentioned and referred to, which FDIC took from each of the insured depositors of the Bank when it paid the insured deposits in the Bank.

6. The pendency of the appeal in the Court of Appeals of Kentucky from the judgment of June 8, 1942, of the Circuit Court of Carter County, Kentucky, hereinabove more particularly mentioned and referred to, constitutes no bar to the maintenance of this action; and no principle of comity impels this Court to decline jurisdiction of this action or, having acquired jurisdiction thereof, to abate this action during the pendency of said appeal in the Court of Appeals of Kentucky. Commonwealth Trust Co. v. Bradford, Receiver, 297 U.S. 613, 56 S.Ct. 600, 80 L.Ed. 920; General Baking Co. v. Harr, Secy. of Banking, 300 U.S. 433, 57 S.Ct. 540, 81 L.Ed. 730; Dempsey v. Pink, Supt. of Insur., 2 Cir., 92 F.2d 572; Dixon v. Cleveland, D.C., 31 F.Supp. 1010; Conners v. Federal Deposit Insurance Corp., supra.

7. The making of a deposit in a bank creates the relationship of debtor and creditor between the bank and the depositor; and under the Kentucky law a depositor of an insolvent bank is entitled to interest on his deposit, at the rate of 6% per annum, from the date on which the bank suspends business until the deposit is paid. Dorman, Banking Com'r, v. Adams, 247 Ky. 678, 57 S.W.2d 534.

8. Under 12 U.S.C.A. § 264, and under the aforesaid written assignments which FDIC took from each of the insured depositors of the Bank when it paid the insured deposits in the Bank, FDIC is entitled to all the rights which the insured depositors themselves would have had, under Kentucky law, against the assets of the Bank in the hands of the Director, including the right (where, as here, the Director has in his hands a surplus available for that purpose) to interest at the rate of 6% per annum from the date on which the Bank suspended business until the date on which the aggregate of the amount which FDIC paid the insured depositors was repaid it by the Director. Federal Deposit Insurance Corp. v. Citizens State Bank of Niangua, 8 Cir., 130 F.2d 102.

9. Insofar as the surplus funds in the hands of the Director available for that purpose are sufficient to pay such sum, FDIC is entitled to interest on the several unpaid balances due it on the sum of $174,104.58 more particularly mentioned and referred to in Finding of Fact 19, supra, as said sum was periodically reduced by the dividends set forth in Finding of Fact 20, supra, from June 26, 1937, the date when the Bank suspended business, to December 30, 1941, the date when the last

of said dividends was paid to FDIC; i e., interest in the sum of $16,128.02. The full sum of $16,128.02 was due and owing to FDIC on December 30, 1941, and bears interest at the rate of 6% per annum from that date until paid.

## Judgment

Pursuant to the foregoing Findings of Fact and Conclusions of Law, it is ordered, adjudged and bindingly declared by the Court:

1. It is the duty of the defendant, Hiram Wilhoit, Director of the Division· of Banking of the Department of Business Regulation of Kentucky, in charge of the liquidation of the Ghent Deposit Bank, Ghent, Carroll County, Kentucky, after the payment of the remaining expenses of administration and liquidation, if any, to pay interest at the rate of six (6%) per cent per annum on claims of creditors (exclusive of claims based upon ownership of stock in the Bank) allowed against said Bank, and to pay the plaintiff herein, Federal Deposit Insurance Corporation, its full pro rata portion of such interest;

2. It is the duty of said defendant, as Director aforesaid, to make such distribution to the plaintiff, Federal Deposit Insurance Corporation, and to other creditors of said Bank, as rapidly as reasonably may be from the proceeds of the liquidation of said Bank;

3. The plaintiff, Federal·Deposit Insurance Corporation, is entitled to a claim against the proceeds of the liquidation of said Bank, and to be paid out of said proceeds as a part of the costs of the liquidation of said Bank, the amount of the plaintiff's costs and disbursements in this action.