**Billie Ruth Campbell LONG, Plaintiff,**

v.

**Ray WATKINS, Individually, and as Administrator of the Estate of Alyce Campbell, Deceased, and as Committee of the Incompetent Levi Watkins, and the Corbin Deposit Bank, a corporation, Defendants.**

No. 1214.

United States District Court
E. D. Kentucky,
London Division.

June 30, 1967.

Stoll, Keenon & Park, by Gladney Harville, Lexington, Ky., for plaintiff.

Hamm, Taylor & Milby, London, Ky., for defendants, Ray Watkins, and others.

Sutton, Martin & Forcht, Corbin, Ky., for defendant, Corbin Deposit Bank.

## MEMORANDUM

SWINFORD, Chief Judge.

In order to understand the decision in this case, it is necessary to give a state-

ment of facts which includes some of the background and circumstances leading up to the issues presented by this action. The record does not reflect the whole story and it was necessary for the court to examine the record in a criminal proceeding in this court styled United States of America v. William David Campbell, No. 13589, London Docket. Since the court is charged with knowledge of its own records and the records of this court reflect matters pertinent to a full understanding of the instant case, there is no impropriety in considering the background disclosed by the record in the criminal case.

The undersigned judge did not try the criminal case and the decision is not affected by that case.

Alyce Campbell was the stepmother of William David Campbell. In January 1960, Mrs. Campbell had on deposit in banks in the States of Georgia and Florida sums of money totaling $48,470.-60. She was a resident of Gray, Knox County, Kentucky, and desired to close out her accounts with the banks in Georgia and Florida and place her money on deposit near her home in the Corbin Deposit Bank, the defendant. She invoked the assistance of her step-son, William David, to carry out her plan of transferring the funds to the defendant bank. On January 4, 1960, she executed a power of attorney to William David. This document was acknowledged before a notary public, witnessed by three individuals, including William David Campbell, and lodged for record in the office of the Clerk of the Knox County Court on January 5, 1960. The power of attorney is in words and figures as follows:

*"POWER OF ATTORNEY*

"KNOW ALL MEN BY THESE PRESENTS:

"That I Alyce Campbell who's Mailing address is Post Office Box 186 Grays, Ky., Knox Co., I do hereby make, constitute and appoint William David Campbell of Grays, Ky., Knox County, Kentucky, my ture and lawful attorney in fact for me and in my name, Authority to do and

perform all and every act, necessary and proper to be done in and any way to take care and possession of any of my property for me. Hereby ratifying and confirming all that my said attorney shall do by virtue hereof. It is understood that William David Campbell is allowed 20% of any property and money returned to me.

"This Power of Attorney shall be in existence for 6 months, this Power of Attorney hereby revokes all or any power of attorney heretofore made by me.

"IN WITNESS WHEREOF I have set my hand this 4th day of January, 1960.
                Alyce Campbell"

On March 4, 1960, Mrs. Campbell executed a second power of attorney to William David Campbell which was witnessed by two witnesses, acknowledged before a notary public and lodged for record in the Clerk's Office of the Knox County Court. This power of attorney is in words and figures as follows:

"POWER OF ATTORNEY
"KNOW ALL MEN BY THESE PRESENTS:

"THAT I Alyce Campbell, of Post Office Box 186, Gray, Knox County, Commonwealth of Kentucky, do hereby make, constitute, and appoint WILLIAM DAVID CAMPBELL, of Post Office Box 41, Gray, Knox County, Commonwealth of Kentucky, my true and lawful attorney in fact for me, and in my name and authority to do and perform all and every act necessary and proper to be done in and any way to take care and possession of any of my property and monies for me.

"This power of attorney is given to enable William David Campbell to obtain my property and monies and place them in or near Corbin, Kentucky.

"I specifically authorize him to transact any business for me, in my name, at the Corbin Deposit Bank, of Corbin, Kentucky.
                Alyce Campbell
"Witnessed by:
"Thomas J. Daniel
"Raymond Lumpkins"

On the same day, Mrs. Campbell executed a third power of attorney to William David Campbell. This document was witnessed by two witnesses, acknowledged before a notary public and lodged for record in the clerk's office. It is in words and figures as follows:

"POWER OF ATTORNEY
"KNOW ALL MEN BY THESE PRESENTS:

"THAT I, Alyce Campbell, of Post Office Box 186, Gray, Knox County, Commonwealth of Kentucky, do hereby make, constitute, and appoint WILLIAM DAVID CAMPBELL, of Post Office Box 41, Gray, Knox County, Commonwealth of Kentucky, my true and lawful attorney in fact for me, and in my name and authority to do and perform all and every act necessary and proper to be done in and any way to take care and possession of any of my property and monies for me.

"This power of attorney is given to enable William David Campbell to obtain my property and monies and place them in or near Corbin, Kentucky.

"I specifically authorize him to withdraw (Account Number 24854, in the name Alyce Campbell) at and from Daytona Beach Federal Savings and Loan Association, of Daytona Beach, Florida.

Alyce Campbell
"Witnessed by.
"Thomas J. Daniel
"Raymond Lumpkins"

On January 20, William David appeared at the bank with a cashier's check for $8,025 drawn on the First National Bank, Madison, Georgia, payable to himself as attorney in fact for Alyce Campbell. He endorsed the check, had one thousand dollars of it paid to him in cash and deposited the balance of $7,025 in a personal checking account in his individual name. On February 16, William David opened an account in the name of William David Campbell or Alyce Campbell by William David Campbell, Attorney in Fact. Between February 16 and March 31, he deposited in this account, at various times, $40,495.66. All of the sums of money which William David handled at various times belonged to Alice Campbell and came from banks in Georgia and Florida in which it had been deposited, except $150 which was a check from J. P. Stevens & Co. payable to Alyce Campbell. All of this money was withdrawn from the bank by William David. He was criminally prosecuted in the federal court, convicted and sentenced to two years in the penitentiary on a charge of "having devised and intended to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises, induced, transported and caused to be transported in interstate commerce Alyce Campbell, from Covington, Georgia, to Corbin, Kentucky, in the execution and concealment of a scheme and artifice to defraud the said Alyce Campbell of money and property in excess of Five Thousand Dollars."

On April 15, 1960, the defendant, Ray Watkins, was appointed by the Judge of the Knox County Court and qualified as committee for Alyce Campbell on the ground that she was incompetent to handle her estate. Alyce Campbell died intestate on or about December 4, 1960. The plaintiff, Billie Ruth Campbell Long, her granddaughter and only heir, brought this action against Ray Watkins individually and as administrator of her estate and the Corbin Deposit Bank, Inc., alleging that Alyce Campbell, through the negligence, fraud and failure to exercise due care and diligence on the part of the defendants, had been caused to lose the monies deposited in the defendant bank by permitting the withdrawals by William David Campbell without proper authority.

It is conceded that the plaintiff cannot sustain a claim against the defendant, Ray Watkins, in any capacity and the court this day enters an order dismissing the complaint as to Ray Watkins at the cost of the plaintiff.

The bank denies all allegations of negligence, carelessness and fraudulent and wilful dissipation of funds entrusted to it as a depository. It takes the position

that it is not liable as a depository under any rule of law and is expressly immune by reason of the provisions of Section 386.130, Kentucky Revised Statutes, which provides as follows:

"(1) If a deposit is made in a bank or trust company to the credit of a fiduciary as such, the bank or trust company *may* pay the amount of the deposit or any part thereof upon the check of the fiduciary, *signed with the name in which the deposit is entered*, without being liable to the principal, *unless it pays the check with actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in drawing the check or with knowledge of such facts that its action in paying the check amounts to bad faith*. (Emphasis added)

"(2) If a check is drawn upon the account of his principal by a fiduciary empowered to draw checks upon his principal's account, the bank or trust company may pay the check without being liable to the principal, unless it pays the check with actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in drawing the check or with knowledge of such facts that its action in paying the check amounts to bad faith."

In the judgment of the court this case must be decided on an interpretation and application of this statute.

■ There are two philosophies of the law. One is that the law should be construed to fit the case. The other is that the case must fit the law. This court subscribes to the latter view. To go a step further, this court also adheres to a respect for separation of powers under a constitutional system of government such as ours. The laws should be made by the duly elected representatives of the people, interpreted by the judiciary and enforced by the executive. Periodically in our history there is a trend in the courts to nullify the duly enacted laws by a narrow and unrealistic constitutional test of their validity. At other times

courts, in an effort to do what appears to them to be justice in a given case, will either ignore the clear intent obvious in the statute, or twist it out of all recognition and in effect rewrite the legislative enactment by judicial fiat. Either extreme is dangerous and bodes untold trouble for the courts and contempt for law by the populace. A legislative enactment must be accepted as the law irrespective of the opinion of its merit by the courts. It should be given a fair and reasonable interpretation and application to a given set of facts in a submitted case.

■ The record discloses that the plaintiff fails to sustain the burden of proving that there was fraud or collusion on the part of the bank in permitting the withdrawals. The bank had a right to rely upon the express authority set forth in the three documents designated powers of attorney. The wording of the documents is amply sufficient to justify the bank in believing in good faith that it was the intention of Alyce Campbell to give blanket authority to William David, her step-son, to handle her money by making deposits or withdrawals as, in his judgment, seemed best. There is no evidence to justify a belief that Mrs. Campbell was not a normal person. Subsequent events may raise doubts in this respect but no witness testified that she was in any way mentally incapable during the transactions involved in this lawsuit.

It should be pointed out here that in addition to the powers of attorney which she had executed, it is a part of the record that Mr. John C. Dixon, County Attorney of Knox County, Kentucky, gave a statement in which he said: "I have this day in the presence of the Sheriff of Knox County, Paul Stamper, talked to Alyce Campbell of Gray, Knox County, Kentucky; after talking to her, I am of the opinion that this woman is of sound mind in full possession of her mental facilities. She states that the power of attorney granted to William David Campbell was her free act and deed."

There is no indication that the defendant bank had this statement in its possession but it is evidential of the fact that Mrs. Campbell was mentally capable at the time she executed the powers of attorney.

In addition to this, on April 12, William David appeared at the bank and issued a check payable to the defendant bank for $21,845.66, signed "William David Campbell, Attorney-in-Fact for Alyce Campbell". In payment for this check, the bank issued its cashier's check payable to William David individually. On April 18 he reappeared at the bank and cashed this cashier's check. On the day the check was written, Mrs. Campbell came by the bank in an automobile and, through a Mr. Schrader who accompanied her, inquired as to her bank balance. The officer of the bank to whom the inquiry was made wrote the balance on a slip of paper, took it to the sidewalk and handed it to Mrs. Campbell who was sitting in the car. She appeared at the time to be somewhat agitated but drove off without making any request that no checks be honored by William David or any advice to the bank whatsoever about her account.

There is a natural inclination to judge this case by subsequent events and therefore to assume that Alyce Campbell was not competent at all times while her stepson was handling her money. There is nothing in the record to sustain such a conclusion. The bits of evidence offered by the plaintiff, which she undertakes to use as proof of the negligence and fraud of the bank, are inconsequential when considered in the light of the fact that the bank was relying upon the authority of a competent depositor. The reference to the fact that the officers of the bank discussed the matter of a concrete block investment with William David is nothing more than to indicate that William David was interested in making an investment in behalf of the estate which he held in trust.. The bankers, as businessmen, directed him to a concrete block businessman who might give him some advice. There was nothing in that transaction to indicate that he proposed to buy the concrete block business for himself.

With the exception hereinafter noted, the court concludes that the position of the bank must be sustained. The case is not one where trust funds have been used to pay a debt due the bank or where the bank otherwise profited from the deposit. It is not one where the bank with knowledge of the fraud aided in its perpetuation by collecting checks or by honoring checks drawn against the deposit. This is simply a case where a bank, without knowledge of any misconduct on the part of the fiduciary, who, to its knowledge had a power of attorney to act, has permitted withdrawal of funds from the account and honored checks drawn against the account with no reason to believe that the fiduciary was converting the trust funds to his own use. Bank of Vass v. Arkenburgh, 4 Cir., 55 F.2d 130.

The plaintiff here has failed to sustain the burden of proof required to establish either fraud or negligence on the part of the bank.

It should be pointed out that Mrs. Campbell chose the Corbin Deposit Bank, of her own free will, as her depository and her step-son, William David, as her attorney in fact to do business with the bank for her. A depositor has a right to rely upon the bank for the security of deposits entrusted to it. He must also recognize the limits of the bank with respect to security for the money deposited. The bank keeps the money secure and under the direction of the depositor. It has no personnel equipped by training to investigate fiduciaries having legal authority to withdraw funds from the depositor's account. While the bank is held to a strict accountability, the law does not impose upon it the duty of insuring the depositor's funds against the depredations of a corrupt or careless fiduciary. For this reason courts should be slow to adjudge responsibility upon a bank in the absence of clear and convincing proof of actual knowledge of fraud. If banks were held to a stricter accountability with each of their hundreds or possibly thousands of depositors, they could not

continue long in business. Certainly they should not be charged with withholding money on checks or drafts, which on their face are regular and in accord with the fiduciary arrangement, until investigation is made.

This case must rest squarely upon an application of the Kentucky statute, Section 386.130, as giving the bank protection. It must follow that a strict construction requires that checks drawn on the account must be "signed with the name in which the deposit is entered". He who lives by the sword shall die by the sword. The account was in the name of "William David Campbell, Attorney-in-Fact for Alyce Campbell" or in such words as clearly showed that it was a trust account. The four checks of March 22, March 31, April 1 and April 4, in the aggregate sum of $18,500, were signed "David Campbell Acct: Alyce Campbell or Wm David Campbell". There is nothing in this signature to indicate that David Campbell was the fiduciary for Alyce Campbell and the checks were not signed with the name in which the deposit was entered.

A bank has no right to pay checks purporting to be signed by a person individually out of a fiduciary account. The power of attorney must be as strictly construed as the statute and the signature must be correct in its correspondence to the name in which the deposit is made. Harding v. Kentucky River Hardwood Company, 205 Ky. 1, 265 S.W. 429; Maley v. East Side Bank of Chicago, D.C., 234 F.Supp. 395; Farmers Bank of Alamo, Ga. v. United States Fidelity & Guaranty Co., 5 Cir., 28 F.2d 676; 10 Am.Jur.2d, P. 521.

The plaintiff should recover the sum of $18,500 with interest on each item from the date of its withdrawal at the rate of six per cent per annum.

The court is of the opinion that the Kentucky statute of limitations does not apply. In Corbin Banking Company v. Bryant, 151 Ky. 194, 151 S.W. 393, the court denied a similar defense on the ground that the statute of limitations

provided by K.R.S. 413.120(1) does not begin to run against a depositor in favor of a bank until the depositor is refused a withdrawal. K.R.S. 355.4-406, cited by the defendant, does not apply to the situation presented by the record here. That statute pertains to facts in which a customer has received a bank "statement of accounts" and fails to point out any error shown by the statement.

A judgment in conformity with this memorandum is this day entered.