No. 33,053

THE EMERALD INVESTMENT COMPANY, *Plaintiff,* v. THE A. J. HARWI HARDWARE COMPANY, *Defendant,* THE SHEFFIELD STEEL CORPORATION, THE JUBILEE MANUFACTURING COMPANY and THE FEDERAL ENAMELING AND STAMPING COMPANY, Intervenors, *Appellants.*

(64 P. 2d 16)

Opinion filed January 23, 1937.

*Austin M. Cowan, C. A. McCorkle, J. D. Fair, W. A. Kahrs* and *Robert H. Nelson,* all of Wichita, for the appellants.

*Robert C. Foulston, George Siefkin, Sidney L. Foulston, Lester L. Morris, George B. Powers, Carl T. Smith, C. H. Morris* and *John F. Eberhardt,* all of Wichita, for the appellee.

*C. L. Kagey, Hal. M. Black* and *L. M. Kagey,* all of Wichita, as *amici curiae.*

The opinion of the court was delivered by

SMITH, J.: This is an appeal by creditors in a receivership from an order of the court overruling their motion for interest on their claims since the appointment of the receiver.

The A. J. Harwi Hardware Co., a corporation, with common and preferred stock, doing business at Wichita, became financially embarrassed, and on February 8, 1934, a receiver was appointed for it in an action brought by the Emerald Investment Company. On March 2, 1934, upon a proper application therefor, the court made an order pertaining to the giving of notices to creditors and the manner and the time of filing claims. This order provided in part

that such claims "shall be in affidavit form" and filed with the receiver or clerk of the court on or before May 5, 1934, and that any claim not so filed should be forever barred. Provision was made for the hearing of any objections to claims filed.

Numerous creditors filed claims with the receiver within the time and in the manner provided by the order of the court. All of those who asked for interest upon their claims asked for such interest only to February 8, 1934, the date the receiver was appointed. The claim of the Sheffield Steel Corporation was made up of a number of listed notes of the face value of $64,113.68, with interest computed on each note to February 8, 1934, in the aggregate of $1,-788.26, making its total claim of $65,981.25. This claim was properly verified or attested by its treasurer, H. R. Warren, at Kansas City, Mo., March 9, 1934, and sent to its attorneys at Wichita. Before filing the claim with the receiver, and without having specific authority to do so, the attorney wrote on the claim the words "and interest." After the time for filing claims and making objections thereto had passed the respective claims were allowed, and, so far as these appellants are concerned, in the sums claimed, that is, with interest to the date of the appointment of the receiver. No objection was made by creditors, who are appellants here, to the sums in which their respective claims were allowed, nor to the fact that the order allowing them did not provide that the claims should draw interest after the appointment of the receiver.

The receiver conducted the hardware business under orders of the court, and appears to have done so efficiently. As funds accumulated partial payments were made upon claims allowed. On October 10, 1935, he was prepared to pay the balance unpaid on all claims allowed, and sent checks to the respective claimants, or their attorneys, for that purpose, marking the checks "payment in full." On October 12, 1935, the receiver filed his report with the court showing the payment of all claims allowed and showing assets in his hands to the value of $60,944.63. Attorneys for the appellants objected to taking the receiver's checks marked "payment in full," contending they were entitled to interest since the appointment of the receiver. By an order of the court they were permitted to take the checks without prejudice to any rights they had to claim such interest. Then they moved the court for an order requiring the receiver to pay interest on their claims since his appointment. At the hearings on these motions, October 15 and December 3, 1935, it developed that six or eight months prior thereto the attorney for

appellants had orally informed the receiver they would claim interest to the date of payment by the receiver. In conducting the hardware business the receiver had made substantial purchases from the Sheffield Steel Corporation, and on being told by its attorney that interest would be claimed he asked the representative of the Sheffield Steel Corporation whether it was making any such claim, and was advised that it was not. He then called Mr. Warren, treasurer of the Sheffield Steel Corporation, by telephone and asked if the corporation was making such a claim for interest, and was advised that it was not making such a claim, or expecting interest since the date of the appointment of the receiver. A few days before the last hearing the Sheffield Steel Corporation wired its attorneys at Wichita: "This is your authority to press our claim for interest against the Harwi Hardware Company." This is the first word from the Sheffield Steel Corporation indicating it had such a claim and appears to have been the first specific authorization its attorneys had to make or press such a claim. The trial court denied the claims of appellants for interest on their claim since the appointment of the receiver, and expressed the view that insofar as principles of equity entered into the matter the equities were against the claimants.

The general rule in insolvency proceedings, such as receiverships, bankruptcy, assignments for benefit of creditors, and the like, is to allow interest on the claims of creditors only to a fixed date, as the date the court took charge of the assets. This is founded on the fact that in the great majority of such cases the assets of the estate are insufficient to pay the claims of all creditors in full. In such cases, to allow interest pending the insolvency proceedings to some creditors and not to others, or at different rates to different creditors, would result in an inequitable distribution among creditors of the assets which passed into the possession of the court. It would also complicate the procedure, tend to increase the expense, and delay closing the proceedings; hence, courts of equity in such cases quite uniformly decline to allow interest pending the insolvency proceedings. In the comparatively few insolvency proceedings in which the assets prove to be more than sufficient to pay all claims in full, including interest pending the proceedings, generally speaking, the creditors are entitled to interest on their claims until paid in full; provided, of course, their claims are of an interest-bearing character. Whether that is done, however, is governed by equitable principles;

that is to say, if interest can be paid pending the proceedings on all claims of the same class, if timely application is made therefor, if there has been no waiver thereof, and if no other just reason appears to defeat such recovery. (See 23 R. C. L. 104; *Am. Iron Co. v. Seaboard Air Line*, 233 U. S. 261, 58 L. Ed. 949, 34 S. Ct. 502.)

There is no serious disagreement between counsel as to the rules above stated except appellants contend equitable principles no longer govern the matter when assets are more than sufficient to pay in full all claims. On this point we cannot agree with appellants. An insolvency proceeding is governed in the main by equitable principles from the beginning to its close, although some questions which arise therein may be controlled by legal rights as distinct from general equitable principles. Even one who has a legal right may waive it, or lose it by failing to make proper or timely application therefor.

Applying these principles to the present claim of the Sheffield Steel Corporation, we first note the only claim it ever filed which was in harmony with the order of the court fixing the time of filing claims, and the form for their preparation, claimed no interest for any time after the receiver was appointed. Apparently its attorney thought the claim should be amended with respect to interest. Since the corporation's treasurer verified its claim nearly two months before the final date for filing claims there was ample time to rewrite and reverify the claim. But this was not done. Obviously, either its attorney's ideas were not conveyed to the corporation, or it declined to change the claim as previously prepared. Before filing the claim its attorney wrote upon it the somewhat ambiguous words "and interest." It is not contended he had specific authority from the corporation to do so. The claim was not reverified. When the claim was allowed these added words were disregarded. It is not clear from the record whether this was done because the added words were unauthorized by the corporation, or because the claim, with these words added, was not in the form required by the court's order, or because the court considered the merits of the question and refused to allow interest after the date the receiver was appointed.

The claim was allowed with interest only to the date the receiver was appointed. No objection was made to this order of allowance and no appeal was taken from it. It was permitted to stand as the final order of the court on the matter. As funds became avail-

able the receiver from time to time made partial payments by way of dividends upon claims allowed, and this corporation received such payments without objection as to the amounts. The receiver, in conducting the business, made the most of his purchases from this corporation. Its attorney, at sometime pending the receivership, told the receiver he expected to claim interest pending the receivership. The receiver immediately took the question up, first with the salesmen for the corporation, and later with its general officer who had verified its claim, and was informed by him that the corporation was expecting no interest, and claiming none, pending the receivership. Nothing further was heard of the matter until the final checks were sent out, when the attorney for the corporation again raised the question, apparently on his own initiative, and some weeks later received from the corporation his first specific authority to do so. Under these facts it seems clear this corporation never made any proper or timely claims for interest pending the receivership. It is also clear that it waived any such claim it might have had as effectively as it could do. The fact that it may have hoped to and later did sell substantial quantities of merchandise to the receiver may have prompted it to do so. We are not concerned with its reasons. The fact remains that it failed to make such a claim at the beginning, and definitely declined to do so when the matter was called to its attention by the receiver. Belatedly, and after checks for final payment had been sent to all creditors and accepted by all of them except the appellants here, it authorized its attorneys to press its claim for such interest. We are not advised by the record the number of other claimants, nor the amounts of their claims. We are told they were numerous and that the aggregate amount of their claims is large; also, that they were unsecured general claims, as were those of appellants. No attempt was made by appellants to have interest paid to all claimants having claims of the same class. Indeed, there is no showing the funds in the hands of the receiver were sufficient to have paid such interest after the payment of the expenses of the receivership. Appellants simply show there is sufficient money on hand to pay interest to them. It would be inequitable, of course, to pay interest to appellants pending the receivership and not pay interest to other claimants having claims of the same class for the same period.

With respect to interest pending the receivership on the claims of the appellants, the Federal Enameling and Stamping Company

and the Jubilee Manufacturing Company, it would be inequitable, also, for the reasons above stated, to have paid interest to these claimants pending the receivership and not to other claimants of the same class. These claims were not large. That of the first named was $1,143.84 and of the other $22.50. Likewise, they had made no contention they were entitled to such interest until after all other creditors had been paid.

We find no reason to disturb the judgment of the trial court, and therefore it is affirmed.