# IN THE MATTER OF THE LIQUIDATION OF THE CHINESE AMERICAN BANK, AN INCORPORATED BANKING INSTITUTION.

## No. 2508.

ARGUED SEPTEMBER 20, 22, 1943.      DECIDED DECEMBER 22, 1943.

KEMP, C. J., PETERS, J., AND CIRCUIT JUDGE BROOKS, IN PLACE OF LE BARON, J., DISQUALIFIED.

OPINION OF THE COURT BY PETERS, J.

This is a bill for instructions brought by the treasurer of the Territory of Hawaii pursuant to the provisions of section 116 of the Hawaii Bank Act of 1931, as amended by Session Laws 1935, Act 170, section 2 (R. L. H. 1935, § 6619), and of section 1 of the Session Laws of 1935, Act 170 (R. L. H. 1935, § 6610A), amendatory of said Bank Act. Instructions were thereby requested of the judge of the circuit court of the first circuit, presiding at chambers, upon matters and questions arising out of the liquidation of the Chinese American Bank, an insolvent domestic incorporated banking institution.

Out of the pleadings of the respective parties, the proceedings had before the circuit judge, the decree and the

specifications of error assigned are posed for our determination the following questions:

1. Where a surplus exists over and above the amount necessary to pay the claims of all the depositors and creditors of an insolvent bank and all the costs and expenses of liquidation, may such surplus be applied by the liquidator to the payment of interest at the legal rate upon the respective amounts of such claims, and if so, for what period?

2. Assuming that general unsecured depositors and general unsecured creditors are entitled to such interest as a matter of substantive law, can they be granted such interest in this proceeding without having filed any claim therefor as provided by the Hawaii Bank Act of 1931, sections 116-130, as amended; section 131 as amended by Special Session 1933-4, Act 48, section 13; sections 132-135; and Special Session 1933-4, Act 48, section 12, Session Laws 1935, Act 170, section 2 (R. L. H. 1935, §§ 6619-39), and having pursued their remedy as therein set forth, or, in other words, does or does not the Bank Act provide an exclusive procedure for the liquidation of banks which would include the filing, allowance, refusal, trial and payment of claims?

3. Do the provisions of section 118 of the Hawaii Bank Act of 1931 (R. L. H. 1935, § 6621), prohibiting the payment of interest on unsecured interest-bearing deposits during the liquidation of an insolvent bank, apply to the case at bar?

4. Does section 130 of the Hawaii Bank Act of 1931 (R. L. H. 1935, § 6634), prohibiting the paying out of the assets of an insolvent bank except upon an itemized, verified claim in the form prescribed by the treasurer, apply to the case at bar?

5. Has there been a waiver in fact of any claim for interest?

6. Does interest at the legal rate upon contractual interest included in the claim of an unsecured depositor, computed under the terms of the deposit up to the time that the treasurer went into possession of the business and assets of the insolvent bank for the purpose of liquidation, constitute compound interest?

7. Are unsecured depositors entitled to priority over general unsecured creditors in the interest adjudged by the circuit judge to be due such depositors and creditors?

8. Upon a bill for instructions filed by the territorial treasurer pursuant to the provisions of Session Laws 1935, Act 170, section 1 (R. L. H. 1935, § 6610A), is it within the province of circuit judges at chambers to render advisory opinions upon matters or questions, instructions relating to which were not requested or necessarily involved in those requested, or relating to matters or questions not arising out of the taking, holding and possession by the treasurer of the property or business of the insolvent bank?

These questions will be discussed singly or in groups as convenience dictates. The numbers used refer to the respective numbers of the questions posed.

1. To appreciate the legal effect upon the respective relations existing between a bank and its general depositors, both commercial and savings, and between the bank and its general creditors, affected by the liquidation of an insolvent bank pursuant to the provisions of the Hawaii Bank Act of 1931, as amended, an analysis of the normal legal incidents of these relations before insolvency supervenes and liquidation ensues may be helpful.

The legal incidents of these relations depend primarily upon the terms and conditions of the respective contracts creating them.[1] The terms of the contracts of deposit in-

---

[1] *Savings Bank* v. *Appler*, 151 Md. 571, 135 Atl. 373, 375; *Mutual Assurance Co.* v. *Norwich Savings Society*, 128 Conn. 510, 24 A. (2d) 477, 480.

volved herein are not disclosed except that they were unsecured. All general deposits, however, whether commercial or savings, create the relation of debtor and creditor.[2] Strictly speaking, the term "deposit" is a misnomer. Where money is deposited in a bank as a commercial or savings deposit, it constitutes a loan[3] to the bank of the money deposited, subject to the undertaking by the bank to repay the same in money to the depositor, his assigns or legal representatives, upon demand conformably to the provisions of the contract of deposit in respect to time of repayment and amount.[4] Ordinarily, a general commercial deposit is repayable upon demand without limitation as to amount and does not bear interest.[5] A demand for repayment usually takes the form of a check. The ordinary general savings deposit is similarly repayable upon demand and the media of demand include the presentation of the depositor's pass book. (Haw. Bank Act 1931, § 74, R. L. H. 1935, § 6575.) Withdrawals from savings accounts similarly as from commercial accounts are unlimited except where the amount is in excess of a predetermined maximum when usually they are limited both in time and amount.[6] A savings deposit bears interest accordingly as the directors of the bank in their discretion

2 *Gimbel Bros.* v. *White*, 10 N. Y. S. (2d) 666-668; *State* v. *San Francisco Sav. etc. Soc.*, 66 Cal. App. 53, 225 Pac. 309; *Hartford Acc. & Ind. Co.* v. *First Nat. Bank*, 281 N. Y. 162, 22 N. E. (2d) 324; *Davis* v. *Elmira Savings Bank*, 161 U. S. 275; *N. Y. County Bank* v. *Massey*, 192 U. S. 138, 145; 8 Michie, Banks & Banking (Rev. ed.) c. 16, § 12, p. 20.

3 *Schippers* v. *Kemphes*, 72 N. J. Eq. 948, 67 Atl. 1042, 1043, *aff'd* 73 Atl. 1118.

4 *Bernhard* v. *Bank of America*, 19 Cal. (2d) 807, 114 P. (2d) 661; *Rossman* v. *Blunt*, 104 F. (2d) 877; *Cicero State Bank* v. *Crowley*, 115 F. (2d) 1022; *In re Kountze Bros.*, 27 F. Supp. 1002, *aff'd* 103 F. (2d) 785, *cert. denied* 60 Sup. Ct. 110.

5 *Dorman, Banking Commissioner* v. *Adams*, 247 Ky. 678, 57 S. W. (2d) 534.

6 *Wells* v. *Black*, 117 Cal. 157, 48 Pac. 1090. (See Haw. Bank Act 1931, § 72 [R. L. H. 1935, § 6573].)

may provide (Haw. Bank Act 1931, § 73, R. L. H. 1935, § 6574), limited only by the provisions of section 118 of the Bank Act (R. L. H. 1935, § 6621). It is the uniform practice in Hawaii to compute savings account interest upon minimum balances on deposit for full calendar quarters and to pay the same semiannually. The word "depositor" in respect to preferences under the provisions of section 117 of the Bank Act (R. L. H. 1935, § 6620) is an inclusive term. It is used herein as referring only to the usual unsecured commercial and savings deposits. It may be said, therefore, that an ordinary commercial deposit is a demand deposit without interest, while a general savings deposit is a demand deposit within a certain maximum and when in excess of that amount, a time deposit.

A demand deposit, whether commercial or savings, is what its name implies—a deposit repayable upon demand —and in the event of refusal by a bank to comply with a demand for repayment of the deposit in whole or in part, a cause of action accrues in favor of the depositor for the sum demanded. The same holds good in the case of a time deposit upon the expiration of the time limitation of repayment. Obviously, if before demand a bank indicates its unwillingness or inability to repay a depositor despite any demand that might be made, a demand by the depositor becomes unnecessary and the right of action accrues without the prerequisite of a demand.[7] Finally, irrespective of whether a deposit is interest-bearing or otherwise, if the contract of deposit is silent as to interest to accrue after demand and nonpayment, interest if allowed by statute is a necessary incident of the depositor's cause of

[7] *Chemical Nat. Bank* v. *Bailey et al.*, 5 Fed. Cas. No. 2635 (C.C.S.D. N.Y. 1875); *Farmers' National Bank of Somerset* v. *Dodson*, 234 Ky. 518, 28 S. W. (2d) 777, 779; *Holden* v. *Bank*, 77 N. H. 535, 93 Atl. 1040, 1042; *Sokoloff* v. *National City Bank*, 250 N. Y. 69, 164 N. E. 745, 749.

action[8] similarly as in all contracts where money is lent and the time of repayment is fixed by the parties or by operation of law.[9]

. Revised Laws of Hawaii 1935, section 7050, which is quoted in the margin,[10] allows interest "for money lent" at the rate of six per cent per annum (prior to the amendment of 1935 [Sess. Laws 1935, Act 19, § 1] it was eight per cent per annum) "for all moneys after they become due" where there is no express contract in writing fixing a different rate of interest. A deposit is "money lent" to the bank. The language of the statute is sufficiently comprehensive to apply to the contractual relation existing between a bank and its depositors.[11] It has been held in other jurisdictions, in construing a similar statute containing the provision also found in our statute of "money received to the use of another," that after demand and nonpayment interest accrues at the legal rate from the time of demand as upon "money received to the use of another."[12] Hence we conclude that upon demand by a

8 *In re Oconto County State Bank*, 241 Wis. 369, 6 N. W. (2d) 353; *Flynn* v. *Banking & Trust Co.*, 104 Me. 141, 69 Atl. 771; *Bassick Co.* v. *Beardsley*, 49 Colo. 275, 112 Pac. 770; *People* v. *Merchants' Trust Co.*, 187 N. Y. 293, 79 N. E. 1004; *Kimball* v. *Williams*, 36 App. D. C. 43; *Totten* v. *Totten*, 294 Ill. 70, 128 N. E. 295, 303; *Hackney* v. *Hood*, 203 N. C. 486, 166 S. E. 323, 324.

9 *Loudon* v. *Taxing District*, 104 U. S. 771; *Stewart* v. *Barnes*, 153 U. S. 456, 462; 5 Williston, Contracts (Rev. ed.) § 1413, p. 3937; § 1410, p. 3925.

10 "Sec. 7050. Legal rate; computation. When there is no express contract in writing, fixing a different rate of interest, interest shall be allowed at the rate of eight per centum per annum, for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing, for money lent, for money due on the settlement of accounts, from the day on which the balance is ascertained, and for money received to the use of another, from the date of a demand made."

11 *Richmond* v. *Irons*, 121 U. S. 27, 64; *Schinotti* v. *Whitney*, 130 Fed. 780.

12 *Holtz* v. *Olds*, 84 Ore. 567, 164 Pac. 1184, 1185; *McGowan* v. *Mc-Donald*, 111 Cal. 57, 43 Pac. 418, 422; *Marsh* v. *First State Bank and Trust Co. of Canton*, 185 Ill. App. 29, 32.

depositor and refusal to pay, or action on the part of a bank evincing a waiver or dispensation of such demand, interest as an incident to such deposit accrues at the legal rate allowed by the statute until discharged by payment or merged in judgment.

Upon what contracts, express or implied, unsecured debts existed against the bank, we are not advised further than they were unsecured. We assume they were unilateral obligations on the part of the bank to pay liquidated sums which did not carry contractual interest. In the absence of provision for interest upon liquidated demands after the same becomes due, interest accrues at the legal rate provided the contract from which the indebtedness arose comes within the provisions of the statute fixing the legal rate.[13] Otherwise not. Obviously, interest does not accrue at the legal rate where the contract from which the indebtedness arose does not come within the provisions of the statute allowing legal interest. Interest is the creature of statute and where a contract is silent upon the subject of interest after due date, interest at the legal rate is not recoverable unless the contract out of which the indebtedness arose is within the provisions of the statute allowing legal interest.[14] Nor upon demand of a bank by a depositor or creditor of the amount due under a contract silent as to interest after maturity and a refusal to pay is it necessary in the event of legal proceedings for the recovery of the debt and legal interest to expressly demand the latter. Demand for the principal of the debt carries with it the interest incident thereto. Where in-

---

[13] *Richmond* v. *Irons*, 121 U. S. 27, 64, cited *supra* note 11; *Clarke* v. *Ward*, 34 Haw. 875, 880.

[14] *Clark* v. *Giacomini*, 85 Colo. 530, 277 Pac. 306, 308; *Looney* v. *Sears*, 94 Ore. 690, 186 Pac. 548, 550; *Coleman, Aud. Pub. Accts.* v. *Reamer's Exe.*, 237 Ky. 603, 36 S. W. (2d) 22, 24; *Palmer* v. *Murray*, 8 Mont. 312, 21 Pac. 126, 127; *Denver Co.* v. *Schafer*, 58 Colo. 376, 147 Pac. 367, 372; *Frazer, Executor* v. *Boss*, 66 Ind. 1, 17.

terest is not expressly stipulated but is a legal consequence of the debt or obligation, it may be recovered though not claimed in pleading.[15]  Demand for the principal is a demand for both principal and interest.[16]

When insolvency supervenes and liquidation ensues, the bank ceases to function as such.  Liquidation is the winding up of the affairs of the insolvent bank for the benefit of its creditors and stockholders.

Whenever the treasurer shall take and hold possession of the property or business of an insolvent bank to liquidate its affairs, whether such possession is upon his own initiative or upon request of the bank itself, such possession is for the primary purpose of winding up the affairs of the bank and distributing its assets to the persons entitled thereto accordingly as their interests may appear. The Hawaii Bank Act of 1931, as amended, contains a complete and comprehensive method of collection by the treasurer of the assets of an insolvent bank and their distribution to the depositors, creditors and stockholders as their interests may appear.  Section 116 of the Bank Act, as amended (R. L. H. 1935, § 6619), provides that "Whenever the treasurer shall take and hold possession of the property or business of a bank to liquidate its affairs, such liquidation shall be effected as in this chapter provided."[17] Provision is made by the Hawaii Bank Act of 1931 for the collection of assets of an insolvent bank (§ 128; R. L. H. 1935, § 6631) ; for the preparation by the liquidator of an inventory of assets (§ 124; R. L. H. 1935, § 6627) ; for

15 *Duke of Richmond* v. *Milne's Ex'rs.*, 17 La. 328; *Knickerbocker Ins. Co.* v. *Gould et al.*, 80 Ill. 388, 395; *United Workmen et al.* v. *Zuhlke*, 129 Ill. 298, 307; 11 Ency. P. & P., Interest § 1.

16 *Ansley* v. *Jordan*, 61 Ga. 483, 487; *Tucker* v. *Page*, 69 Ill. 179, 183; *Grand Lodge A. O. U. W.* v. *Bagley*, 164 Ill. 340, 341; *United Workmen et al.* v. *Zuhlke*, 129 Ill. 298, 307, cited *supra* note 15.

17 See also Hawaii Bank Act 1931, § 7, am. Sess. Laws 1933-4, Act 48, § 1 (R. L. H. 1935, § 6506).

priorities of depositors defined in section 117 of the Act, Revised Laws of Hawaii 1935, section 6620, in the assets of the bank and the enforcement thereof (§§ 119, 120; R. L. H. 1935, § 6622) ; for notice to creditors, the filing of claims and preference (§ 125; R. L. H. 1935, § 6628) ; for the payment of creditors and depositors (§ 131, as amended by Sess. Laws 1933-4, Act 48, § 13; R. L. H. 1935, § 6635) ; and for the payment of remaining assets to stockholders after payment of claims and costs of liquidation (§ 133; R. L. H. 1935, § 6637).

The effect of the suspension and declared insolvency of the bank is to make its deposits immediately due and actionable[18] without the necessity of formal demand,[19] except within the limitation heretofore noted in respect to time deposits. The effect of insolvency and liquidation proceedings is to terminate all existing contracts except such unilateral obligations to pay a liquidated sum at a specified time which had not as yet elapsed, and in such latter case upon its elapsation.[20] In other words all contracts calling for the payment or repayment of liquidated sums become immediately due and actionable without the necessity of any demand except such as may be payable at some specified time which has not elapsed, and in such case upon the expiration of the time specified without demand.

---

18 *Bates* v. *Farmers Sav. Bank of Ankeny*, 3 N. W. (2d) 517, 519 (Iowa 1942); *Dorman, Banking Commissioner* v. *Adams*, 247 Ky. 678, 57 S. W. (2d) 534, cited *supra* note 5.

19 *Richmond* v. *Irons*, 121 U. S. 27, 64, cited *supra* notes 11 and 13; *Sickles* v. *Herold*, 149 N. Y. 332, 43 N. E. 852; *People* v. *Merchants' Trust Co.*, 187 N. Y. 293, 79 N. E. 1004-1006, cited *supra* note 8; *Farmers Bank* v. *Moberly*, 229 Mo. App. 595, 78 S. W. (2d) 906, 909; *Hays* v. *City Bank of Greenwood*, 48 S. E. 736 (S. C. 1904).

20 *Flynn* v. *Banking & Trust Co.*, 104 Me. 141, 69 Atl. 771, cited *supra* note 8; *Arlitt* v. *Seaboard Bank & Trust Co.*, 31 S. W. (2d) 488, 490 (Tex. Civ. App.); 3 Michie, Banks & Banking (Rev. ed.) c. 6, § 18, pp. 64, 65.

582

While the bank itself is not by reason of its liquidation released from liability under its contracts,[21] claims against the general assets of the bank are *in rem*[22] and are subject to the rule usually obtaining upon the liquidation of insolvent estates that interest is not allowable.[23] The rule is not alone a realistic one but has for its justification the principle of equality between creditors.

Ordinarily, the estate involved being insolvent, the resulting deficit in payment of principal renders the computation of interest meaningless. The principle of equality is the controlling consideration.[24] Claimants against the general assets of the insolvent may only share equally.[25] Each claimant is entitled only to that proportion of the assets that his claim bears to the aggregate of the claims asserted,[26] and if each claim bore a different rate of interest inequality would result.[27] Hence it is that in the administration of insolvent estates, whether in insolvency, bankruptcy or receivership, the general rule is that claim-

---

21 *Chemical Nat. Bank* v. *Armstrong*, 59 Fed. 372; *In re Farmers State Bank of Garber*, 185 Okla. 336, 91 P. (2d) 749, 754, 755; 3 Michie, Banks & Banking (Rev. ed.) c. 6, § 18, pp. 64, 65, cited *supra* note 19.

22 *Chemical Nat. Bank* v. *Armstrong*, 59 Fed. 372, cited *supra* note 21; *Board of County Com'rs.* v. *Hurley*, 169 Fed. 92, 94; *Sexton* v. *Dreyfus*, 219 U. S. 339, 344, 345; *Merrill* v. *National Bank of Jacksonville*, 173 U. S. 131, 140, 141.

23 *Gormley* v. *Eison*, 189 Ga. 259, 5 S. E. (2d) 643, 646, 647; *Matter of People* (*Norske Lloyd Ins. Co.*), 249 N. Y. 139, 163 N. E. 129, 131.

24 *Matter of People* (*Norske Lloyd Ins. Co.*), 249 N. Y. 139, 163 N. E. 129, 131, cited *supra* note 22; *Equitable Holding Co.* v. *Equitable B. & L. Assn.*, 202 Minn. 529, 279 N. W. 736, 742; *Emerald Inv. Co.* v. *Harwi Hardware Co.*, 145 Kan. 31, 64 P. (2d) 16-18; *Am. Iron Co.* v. *Seaboard Air Line*, 233 U. S. 261, 265-267; Hanson, Interest in Insolvencies, 32 Mich. L. Rev. 1069 (1933-34).

25 *People* v. *Merchants' Trust Co.*, 187 N. Y. 293, 79 N. E. 1004-1006, cited *supra* notes 8 and 19.

26 *Chemical Nat. Bank* v. *Armstrong*, 59 Fed. 372, cited *supra* notes 21 and 22.

27 *Am. Iron Co.* v. *Seaboard Air Line*, 233 U. S. 261, cited *supra* note 24.

ants against the assets of the insolvent are not entitled to interest; that the delay in payment is the law's delay for which no one is responsible;[28] and that claimants are entitled only to receive their share of the general assets computed upon the proportion indicated.

Where, however, surplus assets exist over and above the amount necessary to pay the claims of all depositors and creditors of the bank and all the costs and expenses of liquidation, it is the universal rule that legal interest be allowed, when applicable, to the extent that such surplus may satisfy the same, from the date that the liquidator took possession until payment, except where under the terms of the contract out of which the claim arose the due date was subsequent thereto, and in such cases, from the latter date to the date of payment.[29] To the term "surplus assets" as herein employed is attributed the same

---

[28] *Thomas* v. *Western Car Company*, 149 U. S. 95; *Tredegar Co.* v. *Seaboard Air Line Ry.*, 183 Fed. 289.

[29] Legal interest on general noninterest-bearing commercial deposits, *Dorman, Banking Commissioner* v. *Adams*, 247 Ky. 678, 57 S. W. (2d) 534, 536, cited *supra* notes 5 and 18; *Federal Deposit Ins. Corporation* v. *Leggett*, 164 S. W.. (2d) 882 (Ark. 1942); *Southwest Nat. Bank* v. *Underwood*, 295 S. W. 253, 254 (Tex. Civ. App.). Legal interest on interest-bearing commercial deposits, *In re American Bank & Trust Co. of Ardmore*, 55 P. (2d) 470, 471 (Okla. 1936). Legal interest on interest-bearing certificates of deposit, *Bank* v. *Bank et al.*, 15 N. D. 594, 603; *Trustees* v. *Merchants National Bank*, 139 Minn. 80, 165 N. W. 491, 494; *Barnes* v. *Arnold*, 51 N. Y. S. 1109, 1118, *aff'd* 61 N. Y. S. 85; *id.* 169 N. Y. 611, 62 N. E. 1093. Legal interest on general savings deposits, *Flynn* v. *Banking & Trust Co.*, 104 Me. 141, 69 Atl. 771, cited *supra* notes 8 and 20; *Federal Deposit Ins. Corporation* v. *Leggett, supra*; *Portland* v. *State Bank of Portland et al.*, 107 Ore. 267, 214 Pac. 813, 816. Legal interest on general claims of creditors, *Chemical Nat. Bank* v. *Armstrong*, 59 Fed. 372, cited *supra* notes 21, 22 and 26; *Merrill* v. *National Bank of Jacksonville*, 173 U. S. 131, 140, 141, cited *supra* note 22; *Gormley* v. *Eison*, 189 Ga. 259, 5 S. E. (2d) 643, 646, 647, cited *supra* note 23; *State ex rel.* v. *Bank & Trust Co.*, 151 Tenn. 195, 268 S. W. 638, 641. Legal interest on secured noninterest-bearing claims, *Ticonic Bank* v. *Sprague*, 303 U. S. 406, 407, 410.

meaning as the term "remaining assets" as employed in section 133 of the Bank Act.

There seems no good reason why the generally accepted rule should not be applied in the instant case, unless, as contended by the stockholders, it is expressly or impliedly prohibited by the provisions of the Hawaii Bank Act of 1931, as amended, or, in respect to contractual interest included in any claim, such allowance would constitute compound interest.

It is admitted that the treasurer of the Territory, prior to his filing the instant petition, paid dividends to claimants aggregating ninety per cent of their claims as presented and allowed. The trial court found that these dividends should be applied on account of principal and none of the specifications of error questions the propriety of this finding. It is also undisputed that after compliance with the provisions of section 133 of the Bank Act (R. L. H. 1935, § 6637) in respect to payment to depositors and creditors of the full amount of their claims as of the date the treasurer took possession, and making provision for unclaimed and unpaid deposits or dividends and the payment of all expenses of litigation, there will remain surplus assets sufficient to pay interest upon all claims of depositors and creditors from the date that the treasurer took possession until payment, except in such cases where the indebtedness became due under the terms of the contract out of which it arose at a later date, and in such instances from such later date until payment. Apparently the necessary factual premises exist for the allowance of interest at the legal rate upon the principal of the allowed claims of unsecured depositors and unsecured creditors of the bank unless the same constitutes compound interest.

2,3,4,5. The Hawaii Bank Act, as amended, does not expressly direct nor prohibit the allowance of legal in-

terest upon interest-bearing claims during the period of liquidation in the event of surplus assets. If depositors and creditors are entitled to such interest, it can only be by implication. In our opinion the absence from the Bank Act of any direction or prohibition in respect to the allowance of legal interest during the period of liquidation in the event of surplus assets clearly implies that the term "full amount" as employed in section 133 of the Act in respect to claims, payment of which is required before distribution may be made to stockholders of remaining assets, includes interest at the legal rate when interest is an incident of the claim; that while section 125, *supra*, in respect to claims and the allowance of claims, and section 130, *supra*, in respect to payments by the treasurer on account of claims, apply, they do not exclude interest at the legal rate when interest is an incident to the claim, and assuming that the provisions of the Act in respect to liquidation of an insolvent bank are exclusive, the provisions referred to do not negative the application of the substantive rule in respect to legal interest upon interest-bearing claims in the event of a surplus.

Section 125 of the Bank Act (R. L. H. 1935, § 6628) quoted in full in the margin,[30] makes provision for the giv-

---

[30] "Sec. 6628. Claims; filing; notice to creditors; preference. The treasurer shall cause notice to creditors to be given by advertisement, in such newspaper as he may direct, once in each of three consecutive months, calling on all persons who may have claims against such bank to present the same, with legal proof thereof, to the treasurer at his office in Honolulu within four months from the date of first publication of the notice. He shall mail a similar notice to all parties whose names appear as creditors upon the books of the bank. If the treasurer doubts the justice or validity of any claim, he may reject the same and serve notice of the rejection upon the claimant, either by mail or personally, and an affidavit of the service of the notice, which shall be prima facie evidence thereof, shall be filed in his office. An action upon a claim so rejected must be brought within three months after service, and notice thereof must be served upon the treasurer of the Territory. Any claim of preference or prior lien on any of the assets of the bank, over the

ing of notice to creditors of the insolvent bank, the presentation to the treasurer of their claims and the allowance of the same by the treasurer. The word "creditors" as employed in the statute includes depositors. All the unsecured deposits involved and upon which legal·interest is prayed were admittedly filed before the expiration of the four months' period and were duly allowed by the treasurer. Of the allowed unsecured claims involved, less than ten per cent were filed prior to the expiration of the four months' period; the remainder afterward. But all were filed prior to the entry of a court order barring all claims not theretofore filed. Section 131 of the Act, as amended by Session Laws of 1933-4, Act 48, section 13 (R. L. H. 1935, § 6635), provides for the declaration and payment of dividends. Section 133 of the Act (R. L. H.

---

claims of other depositors or deposits, must be filed with the treasurer before the expiration of the time fixed in the notice to creditors, and if not so filed the preference claimed shall not be approved or allowed.

"All claims presented before the expiration of the four months period and allowed shall be entitled to payment in full (or pro rata to the extent that the available assets will permit) before any payment shall be made on any claims subsequently presented. Claims subsequently presented and allowed may share in the distribution of the remaining assets, if any, equitably applicable thereto. For the purpose of facilitating the final closing of the liquidation of the bank, the court may by order bar all claims not presented before the expiration of the period of four months from the first publication of the notice to creditors. Upon the expiration of the time limited in the notice for the presentation of claims, the treasurer shall make in duplicate a full and complete list of the claims presented and allowed, and of all that have been rejected by him, of which list one copy shall be filed in his office and the other in the office of the clerk of the court. The treasurer shall, in like manner, make and file supplemental lists, showing all claims presented subsequent to the filing of the first list, such supplemental lists to be filed at least fifteen days before the declaration of any dividend; and in any event the supplemental lists shall be filed at intervals of not exceeding six months. The inventory and list of claims shall be open at all reasonable times for inspection. [L. 1931, c. 177, s. 125.]"

1935, § 6637), also quoted in the margin,[31] provides for the distribution of the remaining assets in the hands of the treasurer and final winding up of the affairs of the bank.

Stockholders urge that the provision of section 118

[31] "Sec. 6637. Claims paid; winding up affairs of bank; liquidating agent; selection; bond; duties. Whenever the treasurer shall have paid to each depositor and creditor of such bank, whose claim or claims as depositor or creditor shall have been duly proved and allowed, the full amount of such claims, and shall have made proper provision for unclaimed or unpaid deposits or dividends, and shall have paid all the expenses of the liquidation, he shall call a meeting of the shareholders of the bank, by giving notice thereof once in each of four successive weeks by publication in one or more newspapers published in the circuit wherein the office of the bank was located. At the meeting the shareholders shall select an agent or agents by ballot to administer the remaining assets and wind up the affairs of the bank, a majority of the stock present and voting in person or by proxy being necessary for a choice. Such agent shall file with the treasurer a bond to the Territory in an amount not less than twenty per centum of the book value of the assets to be surrendered to the agent; provided, that in no case shall the bond be less than one thousand dollars; and provided, further, that the bond shall be executed by the agent as principal and by a surety company authorized to do business in the Territory as surety, and shall be conditioned for the faithful performance of all the duties of his trust.

"When the agent has been selected and has filed the bond herein required, the treasurer shall transfer to the agent all the undivided or uncollected or other assets of the bank then remaining in his hands, and upon such transfer and delivery the treasurer shall be discharged from all further liability to the bank and its creditors. It shall be the duty of the agent to complete the liquidation of the affairs of the bank, and, after paying the expenses thereof, to distribute the proceeds among the shareholders in proportion to the several holdings of stock. If the shareholders shall fail to meet on the date advertised for such shareholders' meeting or within fifteen days thereafter or shall fail to appoint an agent or agents, or if the agent shall fail to qualify as herein required within thirty days after the date of his selection, the treasurer may appoint an agent, who shall file a bond and liquidate the affairs of the bank, in the same manner as though he had been selected by the shareholders, and, upon the transfer and delivery to such agent of all the remaining assets in his hands, the treasurer shall be discharged from all further liability to the bank and its creditors. [L. 1931, c. 177, s. 133.]"

of the Act (R. L. H. 1935, § 6621), quoted in the margin,[32] prohibits the allowance of legal interest even in the event of a surplus. With this contention we cannot agree. In the first place the interest referred to in section 118 of the Act is contractual interest. The limitation imposed is upon "interest-bearing deposits" and it is to such deposits and such deposits only that the cessation of interest has reference. The statute certainly cannot be construed to refer to legal interest. In the second place there was no occasion for expressly providing that interest on unsecured interest-bearing deposits, either commercial or savings, should cease on or as of the date that the bank became insolvent. Contractual interest ceased by reason of the intervention of insolvency and ensuing liquidation. The purpose of the limitation was to define the extent to which depositors were entitled to priority over other creditors. By the provisions of sections 119 and 120 of the Bank Act (R. L. H. 1935, §§ 6622, 6623), quoted in the margin,[33]

---

[32] "Sec. 6621. Interest on unsecured deposits; cessation of insolvency. Interest on unsecured interest-bearing deposits, either commercial or savings, shall cease on or as of the date it shall be determined that the bank became insolvent. [L. 1931, c. 177, s. 118.]"

[33] "Sec. 6622. Depositors; priority of liens; commercial depositors. In the event of the insolvency or voluntary or involuntary liquidation of any bank under the provisions of this chapter, the depositors of the bank shall have a first, prior and exclusive lien upon all the unpledged assets of the bank and, in the distribution of the assets or the proceeds thereof, the same shall be applied to satisfy the amount due the depositors after the payment of expenses of liquidation of the bank; and, where the bank shall have a commercial and a savings department the unpledged assets of its commercial department shall be held and liquidated for the benefit of the depositors of the commercial department, and such depositors shall have a first, prior and exclusive lien upon all the unpledged assets of the commercial department and such assets shall not be liquidated or applied for the benefit of the depositors or creditors of any other department of the bank; provided, that after the depositors of the commercial department shall have been paid in full, any remaining assets of the commercial department may then be used or applied for the benefit of, and the payment to, depositors of the savings department of the bank and the same shall be applied to the amount due the savings depositors prior to being used or applied to

depositors were accorded first, prior and exclusive liens upon the unpledged assets of the bank, subject only to the prior payment of the expenses of liquidation, and the legislature apparently desired to confine the liens of depositors to principal and contractual interest up to the date the bank became insolvent. As heretofore pointed out, the insolvency of the bank operated to terminate all existing contracts of deposit. Hence to remove all doubt as to the extent of such liens and of the meaning to be attributed to the words "paid in full" contained in line fifteen of section 119 and in line thirteen of section 120 of the Bank Act as quoted herein, the legislature included in the Act the express provision for the cessation upon insolvency of contractual interest in respect of unsecured interest-bearing deposits. The term "paid in full," used in similar statutes in connection with priorities accorded depositors of one class over depositors of another class has been construed to include contractual interest up to the date that the liquidator went into possession but to exclude legal interest thereafter.[34]

the payment of other unsecured creditors. [L. 1931, c. 177, s. 119.]"

"Sec. 6623. Savings depositors; priority of liens. In the event of the insolvency of voluntary or involuntary liquidation of any savings bank or of any bank maintaining a savings department, the depositors of the savings bank or savings department shall have a first, prior and exclusive lien on all the unpledged assets of the savings bank or savings department, and in the distribution of such assets or the proceeds thereof the same shall be first applied to satisfy the amount due such depositors after the payment of expenses of liquidation of the savings bank or savings department, and the unpledged assets of the savings bank or savings department shall be held and liquidated and first applied for the benefit of depositors of the savings bank or savings department; provided, that after the savings depositors shall have been paid in full, and if the bank shall have had a commercial department, any remaining assets of its savings department may then be used or applied for the benefit of, and the payment to, the depositors of the commercial department, and in such case shall be applied to the amount due the commercial depositors prior to being used or applied to the payment of other unsecured creditors. [L. 1931, c. 177, s. 120.]"

[34] *Ledford* v. *Skinner,* 156 Ore. 651, 69 P. (2d) 519; *Commissioner of Banks In Re Prudential Trust Co.,* 244 Mass. 64, 138 N. E. 702; *Guardian Bank and Trust Co. case,* 330 Pa. 411, 199 Atl. 171.

That unsecured general creditors were not included in the prohibition of section 118 of the Bank Act is understandable. Unsecured general creditors were not accorded priority under the Act. Also the silence of the Act in respect to secured depositors and secured creditors. Neither could be lawfully disturbed in their right to contractual interest. They were entitled to satisfy such interest out of their security.[35] It is only if and when secured depositors or secured creditors seek to satisfy their claims in whole or in part out of the general assets that they are immediately relegated to the same status as general unsecured depositors and unsecured general creditors and are upon the same footing of equality as unsecured creditors and are not entitled to satisfy contractual interest therefrom.[36]

If it be conceded that the Hawaii Bank Act is silent upon the subject of interest during the period of liquidation, it must also be conceded that it does not prohibit the allowance of interest in the event of a surplus. Under the general rule of law where legal interest attaches, the debtor is required to pay interest up to the time he pays his debt. If the Hawaii Bank Act does not control, the general law does.[37]

Nor do the provisions of section 130 of the Bank Act (R. L. H. 1935, § 6634), quoted in the margin,[38] taken in

---

35 *Central Nat. Bank* v. *Bateman & Co's. Inc.*, 15 Del. Ch. 31, 131 Atl. 202, 204; *Coder* v. *Arts*, 152 Fed. 943, 950; 3 Collier, Bankruptcy, par. 63.16, § 63a(1), p. 1835.

36 *Central Nat. Bank* v. *Bateman & Co's Inc.*, 15 Del. Ch. 31, 131 Atl. 202, 204, cited *supra* note 35.

37 *Johnson* v. *Norris*, 190 Fed. 459, 463.

38 "Sec. 6634. Deposit of moneys collected; paying out money; method. The moneys collected by the treasurer shall, from time to time, be deposited in one or more banks under his supervision, subject to his order. No moneys shall be paid out of the assets of any insolvent bank, in the hands of the treasurer for liquidation, unless on an itemized claim duly verified by the oath of the claimant or petitioner and in a form prescribed by the treasurer. [L. 1931, c. 177, s. 130.]"

connection with the provisions of section 133 of the Act as urged by the stockholders, impliedly prohibit the allowance of legal interest in the event of a surplus. The applicable provisions of the Bank Act in respect to the liquidation of insolvent banks may be considered exclusive for the purposes of this case. Elsewhere they have been so held.[39] But the provision of section 130 prohibiting the treasurer from paying moneys out of the assets of the insolvent bank in his hands for liquidation, except on an itemized claim duly verified by the oath of the claimant and in the form prescribed by the treasurer, is not susceptible to the implications attributed to it. Matured claims of creditors relate to and are predicated upon the rights of a creditor as they existed at the time the treasurer went into possession of the property of the bank for the purpose of winding up its affairs. They are necessarily limited in amount to the amount due under the contract then existing between the creditor and the insolvent bank at that time. Of course, unmatured claims would relate to the time when the contracts out of which they arose matured. The analogy between claims against an insolvent bank and claims against the estate of a decedent is complete. Interest, either contractual or at the legal rate accordingly as the former or latter applies where the indebtedness has matured, may be included in a claim against the estate of a decedent but only up to the date of death. And where the estate of a decedent as of the date of death is insolvent but subsequently in the course of administration becomes solvent, legal interest, though not claimed, is allowed upon interest-bearing debts.[40]

The legal status of creditors of an insolvent bank as it exists at the time the treasurer goes into possession for

---

[39] 3 Michie, Banks & Banking (Rev. ed.) c. 6, § 15, pp. 52, 53.

[40] *Williams, Administrator* v. *American Bank and others*, 4 Metc. 317 (Mass.).

the purpose of liquidation fixes their rights to share in the distribution of the estate of the insolvent bank.[41] From the admission of insolvency or its judicial determination, it is reasonable for creditors to assume that a deficit and not a surplus will exist upon distribution. Until all claims of creditors and depositors and the costs and expenses of liquidation have been paid, it cannot be known whether a surplus will exist. Hence the claim as presented and allowed should be as of the date when the treasurer went into possession. Of course if the debt is immature at that time the claim would relate to the date of maturity. The inclusion or exclusion from the claim of a demand for interest to accrue thereafter and during the period of liquidation in the event of a surplus is immaterial. If legal interest ultimately attaches to the amount of the claim, it attaches by reason of being a legal incident of the indebtedness and not by reason of a claim therefor. If a surplus develops, legal interest should attach to interest-bearing claims. And the "full amount of such claims" within the meaning of that term as employed in section 133 of the Act, in our opinion, includes legal interest in the event of surplus assets, unless legal interest on contractual interest constitutes compound interest. The same term, i.e. "full amount of such claims" similarly employed has been so construed in other jurisdictions.[42] The absence from the Bank Act of a direction or prohibition in respect to interest in the event of a surplus gives rise to the implication that the legislature intended in such event that the rights of the parties be the same as they would have been against the bank upon demand and refusal to pay. In the liquidation of insolvent banks the realization of a surplus is a rare experience.

---

41 *Mortgage Loan Co.* v. *Livingston*, 78 F. (2d) 517, 521.

42 *State ex rel.* v. *Bank & Trust Co.*, 151 Tenn. 195, 268 S. W. 638, cited *supra* note 29; *Greva* v. *Rainey*, 2 Cal. (2d) 338, 41 P. (2d) 328.

The legislature was primarily concerned with the liquidation of insolvent banks under ordinary conditions usually obtaining and apparently did not concern itself with the exceptions. And it is reasonable to assume, in the absence of any direction or prohibition in respect to interest in the event of a surplus, that the legislature intended in such event that the general law applicable to such a situation apply. In the absence of express direction or prohibition of the allowance of interest in the event of a surplus, the National Bank Act has been similarly construed.[43] The word "debt" under similar circumstances has been construed to include legal interest.[44] On the other hand the term "indebtedness" has been held to exclude legal interest.[45] After all it is a matter of statutory construction and the cases differ accordingly as the statutes involved may differ. Unless the foreign statute involved is substantially the same as our local statute, authorities construing the same are of little help.

The claim is made that there has been a waiver in fact of any claim for interest. As heretofore pointed out, legal interest need not be claimed in the pleading. Assuming the claims filed by depositors and general creditors are analogous to a pleading, it was unnecessary to include therein a claim for legal interest to accrue in the event of surplus assets. Moreover, the contingent quality of incidental interest makes the rule of waiver of interest inapplicable. Until the principal of all the claims filed and allowed shall have been paid and the costs and expenses

---

[43] *Richmond* v. *Irons*, 121 U. S. 27, 64, cited *supra* notes 11, 13 and 19; *Chemical Nat. Bank* v. *Bailey, et al.*, 5 Fed. Cas. No. 2635 (C.C.S. D.N.Y. 1875) cited *supra* note 7; *Nat. Bank, etc.* v. *Mechanics' Nat. Bank*, 94 U. S. 437; 7 Am. Jur. § 744, p. 536.

[44] *Stein* v. *Delano*, 121 F. (2d) 975, 979; *Brown & others* v. *Lamb & another*, 6 Metc. 203, 210.

[45] *Gormley* v. *Eison*, 189 Ga. 259, 5 S. E. (2d) 643, 645, cited *supra* notes 23 and 29.

of the liquidation proceedings discharged, it could not be known whether a surplus would exist permitting the payment of legal interest. The situation dispensed with the necessity of a claim for legal interest.[46] Of course, where a creditor has not stipulated for interest and accepts payment of the principal of the indebtedness in full he cannot subsequently recover interest thereon.[47] The same result ensues where the claimant expressly waives interest and accepts the principal of his claim in full satisfaction of the same.

Moreover, the form of claim prescribed by the treasurer excluded any claim for legal interest in the event of a surplus. The prescribed form was in the nature of a notice by the treasurer to the depositor of the credits shown by the books of the bank in respect to six specific items, *viz.*, "savings account," "commercial account," "certificate of deposit," "certified check," "draft on bank" and "other claims," and the depositor was requested, if the credits shown below were correct, to sign the claim in the place provided, and if the depositor disputed the amount or amounts for any reason, to enter the amount claimed to be correct in the blanks provided at the bottom of the page entitled, "claim for other or different amount(s)." What form of claim was prescribed for general creditors does not appear. No mention is made in the prescribed form relating to deposits of interest to accrue thereafter, either contractual or legal. It certainly cannot be said that the space allotted in the form for "other claims" or "claim for other or different amount(s)" has any reference to legal interest thereafter to accrue. If any waiver

---

[46] *Stein* v. *Delano*, 121 F. (2d) 975, 979, cited *supra* note 44; *State ex rel.* v. *Bank & Trust Co.*, 151 Tenn. 195, 268 S. W. 638, cited *supra* notes 29 and 42.

[47] *In re John Osborn's Sons & Co.*, 177 Fed. 184, 185; *Bassick Co.* v. *Beardsley*, 49 Colo. 275, 112 Pac. 770, 771, cited *supra* note 8; *Kimball* v. *Williams*, 36 App. D. C. 43.

of claim of legal interest may be said to exist, it would be on the part of the treasurer and not the depositor. The form of claim was prescribed by the former to which the latter under the statute was required to conform.

The cases of *Ledford* v. *Skinner* and *Commissioner of Banks In Re Prudential Trust Co.*, both cited *supra* note 34, are cited by stockholders as supporting the contention that the words "paid * * * the full amount of such claims," found in the first five lines of section 133 of the Hawaii Bank Act, impliedly prohibit legal interest during the period of liquidation. The term "paid in full" which was construed in those cases was used, however, similarly as that term is used in sections 119 and 120 (R. L. H. 1935, §§ 6622, 6623) of our local Bank Act according depositors a preference over general creditors. Preferences are in derogation of the common law and "should not be extended by construction beyond the express command of the statute." The rationale of the decisions in those cases is pointed out in the case of *In re Pacific Coast Bldg.-Loan Assn.*, 15 Cal. (2d) 134, 99 P. (2d) .251. (See also *Greva* v. *Raincy*, cited *supra* note 42.) Statutes providing for the liquidation of insolvent banks on the other hand are liberally construed.[48] The *Guardian Bank and Trust Co. case*, cited *supra* note 34, is also cited in support of the construction contended for. The Pennsylvania statute under consideration in that case expressly defines the preference granted thereby excluding noninclusive items. (See also *Federal Dep. Ins. Corp.* v. *Department of Financial Inst.*, 44 N. E. [2d] 992, 996, 997 [Ind. 1942].)

6. Stockholders contend that the allowance of legal interest upon claims including contractual interest would constitute compound interest and comes within the prohibition of Revised Laws of Hawaii 1935, section 7056,

---

48 3 Michie, Banks & Banking (Rev. ed.) c. 6, § 2, p. 12.

which provides that "No action shall be maintainable in any court of the Territory to recover compound interest upon any contract whatever."

In our opinion the prohibition of the statute does not apply for the reason that as far as the record discloses none of the contracts giving rise to unsecured claims against the bank by depositors or general creditors includes any provision for compound interest. Interest-bearing deposits as far as we know stipulated for simple interest. None of the contracts of general creditors, as far as is disclosed by the record, carried contractual interest and if any interest attached to the claims of general creditors, it was legal interest and hence simple interest.

The solution of the problem presented, therefore, is to be found in the rules of law applicable to the computation of simple interest.

The first and primary rule applicable to simple interest is that it is computed solely upon principal.

Of the claims filed by depositors, the amount claimed as on deposit when the treasurer went into possession of the property of the bank is unquestionably principal; similarly in the case of the claims of unsecured creditors. Such of the claims as represented the unilateral obligation of the bank to pay liquidated sums are also unquestionably principal. So that holding as we do that unsecured depositors and creditors are entitled in the event of a surplus to legal interest from the date that the treasurer went into possession until payment, but two items, *i.e.*, contractual interest included in the claims of depositors, and legal interest included in the claims of general creditors, computed up to the time the treasurer went into possession, are the only items requiring consideration. Of course, if interest payable at that time was credited

by the bank upon its books, such interest became principal.[49]

In respect to contractual interest upon deposits, it is conceivable that they were, factually, of two classes, *i.e.*, one, where the interest was payable on the same day that the treasurer took possession but was not credited upon the books of the bank, and the other, where under the terms of the deposit interest had accrued but was not yet payable. Legally, however, the effect of section 118 of the Bank Act providing that all interest cease upon interest-bearing deposits upon the bank becoming insolvent (date when bank closed its doors as was done in this case may be accepted as the date of insolvency in absence of proof to the contrary[50]) was to accelerate the date of payment of all interest accrued but not yet payable under interest-bearing contracts of deposit. Section 118 of the Act was necessarily a part of the contract of deposit to the same effect as if expressly incorporated therein. So that by insolvency all such depositors of interest-bearing deposits were placed upon an equal footing as to the maturity date of interest payable on the deposits. And the problem presented in respect to interest accrued upon deposits to the date of the treasurer going into possession resolves itself into the single question of whether, in contemplation of law, the stipulated interest due and payable by the bank to the date that the treasurer went into possession is interest or principal. If it is the latter and legal interest attaches, the interest to which the depositor is entitled is simple interest and not compound interest.

There is a conflict in the decisions upon the right of an obligee of an express promise to pay interest upon a definite sum at a specified time, to legal interest upon such interest after the same becomes due and payable and

---

49 *May* v. *Union Dime Sav. Bank*, 278 N. Y. S. 458.

50 3 Michie, Banks & Banking (Rev. ed.) c. 6, § 58, p. 149.

remains unpaid. The weight of authority, however, sustains the thesis that such contractual interest upon default in payment becomes a debt[51] and as such is converted into principal, and if within the statute allowing legal·interest, draws interest at the legal rate.[52] Where an obligor expressly promises to pay interest at a predetermined rate upon a principal sum at a specified time, upon his default in payment and in the absence of agreement of the parties upon the subject, legal interest attaches if the obligation to pay contractual interest is within the statute allowing the same. Contractual interest due under those circumstances, moreover, takes the same legal status as the principal upon which it accrues and is "money lent" within the meaning of that term as employed in Revised Laws of Hawaii 1935, section 7050.

The rationale of the cases allowing legal interest where there is an express promise to pay interest at a specified time disposes of the ancillary question of whether legal interest attaches upon legal interest theretofore accrued. The presence of legal interest presupposes the absence of any express promise upon the part of the obligor to pay interest, and under that state of the case its legal status as interest continues as such. This distinction is emphasized in the case of *New England Mortgage Security Co.* v. *Vader*, cited *supra* note 52. Hence it is that legal interest may be computed only upon the principal included in the claims of general unsecured creditors. To the ex-

---

51 *Eslava et al.* v. *Lepretre*, 21 Ala. 504, 56 Am. Dec. 266, 280; *Preston* v. *Walker*, 26 Iowa 205; *Paulling v. Creagh's Adm'rs*; *Creagh's Adm'rs* v. *Paulling*, 54 Ala. 646; *Doig* v. *Barkley*, 3 Rich. L. 125 (S. C.); *Hale* v. *Hale*, 1 Cold. 233 (Tenn.); *Voigt* v. *Beller et ux.*, 56 Mich. 140, 22 N. W. 270.

52 *New England Mortgage Security Co.* v. *Vader*, 28 Fed. 265, 271; *Greenleaf* v. *Kellogg*, 2 Mass. 568; *Talliaferro's Ex'ors.* v. *King's Adm'rs and Heirs*, 9 Dana 331 (Ky.); *Anketel and wife* v. *Converse, et al.*, 17 Ohio St. 11; *Wheaton* v. *Pike*, 9 R. I. 132; *Peirce & al. Ex'rs.* v. *Rowe*, 1 N. H. 179; *Catlin* v. *Lyman*, 16 Vt. 44; 33 C. J., Interest § 65, p. 206.

tent that any allowed claim of an unsecured general creditor contains legal interest, the amount thereof should be credited upon the legal interest allowed upon principal from maturity of the debt to date of payment.

7. The only priority accorded depositors under the Bank Act is that created by section 119 and it is limited to the "amount due" as of the date when the treasurer went into possession. It does not apply to legal interest thereafter to accrue. Depositors possess no priority over general creditors in the surplus assets of the insolvent bank but are governed by the rules of equality applicable to all unsecured creditors alike.

8. The final decree of the circuit judge included instructions to the treasurer in respect to the enforcement by the latter, pursuant to the provisions of section 139 of the Bank Act (R. L. H. 1935, § 6643), of the double liability of stockholders imposed by the provisions of section 136 of the Bank Act (R. L. H. 1935, § 6640) for the payment of interest adjudged by the court to be due should the treasurer discover that assets were insufficient to pay interest. The court also, in that connection, construed the term "deposit liabilities" as employed in section 139 of the Bank Act (R. L. H. 1935, § 6643), as including the interest payments adjudged by him to be due. This action of the circuit judge was assigned as error by the treasurer.

The jurisdiction of circuit judges at chambers over the liquidation of insolvent banks is defined by the provisions of section 116 of the Bank Act, *supra*, as amended by Session Laws 1935, Act 170, section 2, and of Session Laws 1935, Act 170, section 1 (R. L. H. 1935, § 6610A). The statutes referred to, omitting the amendment of 1935 which is immaterial to our consideration, are quoted in the margin.[53] An analysis of the provisions of the statutes

---

[53] "Sec. 6619. Administration by treasurer; court supervision; appeals. Whenever the treasurer shall take and hold possession of the

quoted leads to the conclusion that the judicial supervision reposed in circuit judges over the liquidation of insolvent banks is extremely limited. By section 116 of the Bank Act, as amended, the jurisdiction of circuit judges at chambers, whether upon the petition of the treasurer or any party interested, or upon a request of the treasurer for instructions, is limited to such matters which by the Bank Act as originally enacted or as subsequently amended are stated to be subject to judicial review or approval in connection with the liquidation of an insolvent bank. By the provisions of Session Laws 1935, Act 170, section 1, *supra*, the jurisdiction of circuit judges upon a bill of the treasurer requesting instructions is further impliedly limited not only to the instructions

property or business of a bank to liquidate its affairs, such liquidation shall be effected as in this chapter provided. Jurisdiction is conferred upon the circuit judge presiding at chambers in the circuit court of the circuit in which the principal office of any bank is located, upon petition filed by the treasurer or by any other party interested, or upon any request of the treasurer for instructions, to hear and determine any matter which by this chapter is stated to be subject to judicial review or approval in connection with the liquidation of any bank. From every order made by any circuit judge under this section an appeal shall lie to the supreme court in like manner as an appeal lies from an order or decision of a circuit judge at chambers. Such appeal shall not stay any order of the circuit judge unless the supreme court shall so order. [L. 1931, c. 177, s. 116.]"

"Section 1. Chapter 218 of the Revised Laws of Hawaii 1935 is hereby amended by adding a new section thereto to be numbered section 6610A and to read as follows:

"'Sec. 6610A. [Jurisdiction conferred upon circuit judges at chambers; appeal.] Whenever the treasurer shall take and hold possession of the property or business of a bank to conserve its assets, jurisdiction is conferred upon the circuit judge presiding at chambers in the circuit court of the circuit, in which the principal office of any bank is located upon the bill of the treasurer requesting the instruction of the court relating to any matter or question arising out of such taking and holding or possession. From every order made by any circuit judge under this section an appeal shall lie to the supreme court in like manner as an appeal lies from an order or decision of a circuit judge at chambers. Such appeal shall not stay any order of the circuit judge unless the supreme court shall so order.'" Sess. Laws, 1935, Act 170, § 1.

requested but also to instructions relating to a matter or question arising out of the taking, holding and possession by the treasurer of the property or business of the insolvent bank to conserve its assets. It is conceivable that questions of law may become involved which are incidental to the instructions requested and it might become the duty of the circuit judge to instruct the treasurer in respect thereto. But both conditions must coexist. The scope of supervision of circuit judges over the liquidation of insolvent banks is measured by the scope of the instructions requested but only when they arise out of the taking, holding and possession by the treasurer. Even though requested, instructions which do not relate to any matter or question arising out of the taking, holding and possession by the treasurer of the property and business of the insolvent bank for the conservation of its assets may not be considered by circuit judges.

Circuit judges at chambers do not possess general jurisdiction over the liquidation of insolvent banks. Their jurisdiction is purely statutory. The treasurer in his capacity as liquidating officer of an insolvent bank is not an officer of the court. He is not an "equity receiver,"[54] nor does his filing a bill for instructions make him an officer of the court.[55] Although the treasurer "is vested with powers often conferred upon receivers, and subject in many particulars to the control of the court, he is nevertheless a public officer with whose appointment and conduct as prescribed by the statute the court has no responsibility. He performs duties imposed upon him in the main by the statute."[56] A bill for instructions is in the nature of a special statutory proceeding and its jurisdictional incidents are controlled by the statute.

[54] *Zimmerman* v. *Central Union Bank,* 8 S. E. (2d) 359 (S. C. 1940).

[55] *In re Chetwood, Petitioner,* 165 U. S. 443, 459.

[56] *Commissioner of Banks* v. *Highland Trust Co.,* 283 Mass. 71, 186 N. E. 229, 230.

In our opinion the circuit judge exceeded his jurisdiction in giving the instructions complained of. Nowhere in the Bank Act is provision made for judicial review or approval of the enforcement by the treasurer, pursuant to the provisions of section 139 of the Bank Act, of the double liability of stockholders. From the amended bill for instructions it affirmatively appears that no request was made by the treasurer for instructions upon the enforcement of the double liability of stockholders, nor were such instructions necessarily involved in those instructions requested. Moreover, it does not appear that any matter or question arose out of the taking, holding and possession by the treasurer of the property and business of the bank in respect to the enforcement by the treasurer of the double liability of stockholders. On the contrary, the record is open to the conclusion that the surplus assets of the bank, after the payment of the final dividend of ten per cent and the discharge of all of the requirements of section 133 of the Bank Act, *supra*, will be amply sufficient to pay in full all interest accrued upon the claims of depositors and such claims of creditors as may be entitled thereto.

Pursuant to the views herein expressed, a final decree embodying the result hereof will be entered by this court upon presentation.

*J. R. Cades* (*Smith, Wild, Beebe & Cades, W. Wight* and *P. A. Lee* with him on the briefs) for E. R. Cameron and stockholders as a class.

*J. L. Coke* argued for certain stockholders but filed no briefs.

*R. V. Lewis*, Deputy Attorney General (*E. K. Kai*, Attorney General, with her on the briefs) for Norman D. Godbold, Jr., Treasurer of the Territory and Liquidator of Chinese American Bank.

*W. Y. Char* (*Ray J. O'Brien* with him on the briefs) for savings and commercial depositors as a class.